UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT



| | |
|---|---|
| EUNICE SMITH,<br>*Plaintiff* | CIVIL ACTION NO. 3:03CV00386(AWT) |
| v. | |
| STATE OF CONNECTICUT,<br>DEPARTMENT OF CORRECTION,<br>*Defendant* | JANUARY 13, 2004 |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
ITS MOTION TO DISMISS AMENDED COMPLAINT**

Pursuant to Federal Rule Civ. P. 12(b)(1) and 12(b)(6), the defendants hereby move to dismiss certain counts of the plaintiff, Eunice Smith's amended complaint dated December 22, 2003.

**I.      INTRODUCTION**

The plaintiff, Eunice Smith, brought her original action against the State of Connecticut, Department of Correction,, alleging that she has suffered discrimination in the workplace. The plaintiff amended her complaint for the purpose of adding two individual defendants relating to her § 1981 and common law emotional distress claims. Ms. Smith has alleged that she suffered a hostile work environment on account of her race in violation of Tile VII of the Civil Rights Act and in violation of 42 U.S. C. § 1981. Additionally, she seeks money damages for state law claims of intentional and negligent infliction of emotional distress.

**II.     STANDARD FOR MOTION TO DISMISS**

A defendant may assert on a motion to dismiss defenses to a claim for relief in any pleading, including lack of jurisdiction over the subject matter and failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

In ruling on a 12(b)(6) motion, a court is required to accept the material facts alleged in the complaint as true; Bernheim v. Litt, 78 F. 3d 318, 321 (2d Cir. 1996); see also Easton v. Sundram, 947 F. 2d 1011, 1014-15 (2dCir. 1991)(citing Cooper v. Pate, 378 U.S. 546, 84 S. Ct. 1733 (1964) (per curriam): and not to dismiss "unless it appears beyond doubt that the plaintiff can prove no sets of facts in support of his claim which would entitle him to relief." Easton, 947 F.2d at 1014-15 (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)); see also Cooper v. Parsky, 140 F. 3d 433, 440 (2d Cir. 1998); Barnum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991).

The admonishment to construe plaintiff's claim liberally when evaluating Rule 12 dismissals does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions. See Orick v. Banziger, 945 F. Supp. 1084 (S. D. Ohio, 1996), affirmed without opinion, 178 F. 3d 1295 (6th Cir. 1999) (discussing standard for rule 12(b)(6) dismissals and citing Wright, Miller & Cooper, Federal Practice and Procedure: @ 1357 at 596 (1969)). "In practice, a complaint…must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Id. (citing Car Carriers, Inc. v. Ford Motor Co., 745 F2d 1101, 1106 (7th cir. 1984), cert denied, 470 U.S.1054, 105 S. Ct. 1758 (1985), quoting In Re: Plywood Antitrust Litigation, 655 F. 2d 627, 641 (5th Cir. 1981), cert. dismissed, 462 U.S. 1125, 103 S. Ct. 3100 (1983)); see also Sutliff, Inc. v. Donovan Companies, Inc., 727 F. 2d 648, 654 (7th Cir. 1984; Wright, Miller & Cooper, Federal Practice and Procedure: @ 1216 at 121-23 (1969). Although the Court should not hold the pleader to an impossibly high standard and must recognize the policies behind Rule 8 and the concept of notice pleading, when a complaint omits facts that, if they existed, would clearly dominate the case, the court may assume that those facts do not exist. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F. 2d 434, 437, 6th cir. (1988) (clarifying the threshold for a Rule 12(b)(6) dismissal). Rule 12(b)(6) does not allow the

substitution of conclusory statements "for minimally sufficient factual allegations." Furlong v. Long Island College Hosp., 710 F. 2d 922, 927 (2d cir. 1983).

### III. ARGUMENT

#### A. THE PLAINTIFF'S TITLE VII ACTION AGAINST INDIVIDUAL DEFENDANTS DOES NOT STATE A VIABLE LEGAL CLAIM.

The plaintiff has asserted her Title VII claim as to all defendants. In 1995, the Second Circuit Court of Appeals held that there is no individual liability under Title VII in Tomka v. Seiler, 66 F.3d 1295, 1313 (2d. Cir. 1995).

The rationale for this decision rests with the definition of the term "employer", which limits liability to employers with 15-20 employees. Our circuit adopted the following analysis when it first determined that there was no individual liability under Title VII:

> "[C]ongress did not want to burden small entities with the costs associated with litigating discrimination claims. If Congress decided to protect small entities with limited resources from liability, it in inconceivable that Congress intended to allow civil liability to run against individual employees."

Tomka, 66 F.3d at 1314, quoting Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587 (9th Cir. 1993), cert. denied ___ U.S. ___, 114 S.Ct. 1049 (1994). There is no individual liability against supervisory employees under Title VII and therefore the plaintiff's Title VII claims against the individually named defendants should be dismissed.

#### B. THE PLAINTIFF'S CAUSE OF ACTION AGAINST THE STATE OF CONNECTICUT FOR DISCRIMINATION UDNER 42 U.S.C. § 1981 IS BARRED BY THE ELEVENTH AMENDMENT TO THE UNITED STATE CONSTITUION.

The Eleventh Amendment to the United States Constitution bars a suit in federal court against a state or one of its agencies for equitable or legal relief unless the state has expressly consented to be sued, or Congress explicitly abrogates state immunity. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 99-100 (1984). *Dube v. State of New York*, 900 F.2d 587,

3

594 (2d Cir. 1990); *Daisernia v. State of New York*, 582 F.Supp. 792 (N.D.N.Y. 1984) There is no dispute that the only named defendant in this case, the Connecticut Department of Correction is a state agency.

The doctrine of State sovereign immunity and its breadth vis-à-vis the Eleventh Amendment have been discussed at length in several recent Supreme Court decisions. See *Alden v. Maine*, 527 U.S. 706 (1999); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996); *see also Board of Trustees of the University of Alabama v. Garrett*, _____ U.S. _____, 121 S.Ct. 955 (Feb. 21, 2001) (discussing Congressional abrogation of a State's sovereign immunity in the context of the Americans With Disabilities Act); *Kimel v. Florida Board of Regents*, 528 U.S. 62 (Jan. 11, 2000) (discussing Congressional abrogation under the Fourteenth Amendment of a State's sovereign immunity and express waiver by a State).

The doctrine of State sovereign immunity finds expression in the Eleventh Amendment, which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or in equity, commenced or prosecuted against one of the United States by Citizens of another State, or by citizens or Subjects of any Foreign State." However, in interpreting the scope of the States' constitutional immunity from suit, the Supreme Court has looked to the historical concept of State sovereign immunity rather than adhering to the literal wording of the Eleventh Amendment. Thus, in *Hans v. Louisiana,* 134 U.S. 1, 14-15 (1890), the Court held that sovereign immunity barred a citizen from suing his own State under the federal question head of jurisdiction. Moreover, it is well settled that State immunity extends not only to the States but also to State agencies and to State officers who act on behalf of the State. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142-47 (1993); *Farricielli v. Holbrook*, 215 F.3d 241, 245 (2d Cir. 2000).

Although State sovereign immunity is often referred to as "Eleventh Amendment Immunity," the Supreme Court has recently reaffirmed that a State's sovereign immunity far exceeds the literal words of the Eleventh Amendment. As the Supreme Court explained, the phrase "Eleventh Amendment Immunity" is "a convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from nor is limited by the terms of the Eleventh Amendment".[1]  *Alden*, 527 U.S. at 713; *see also Burnett v. Carothers*, 192 F.3d 52, 55-56 n.1 (2d Cir. 1999), *cert. denied*, 121 S.Ct. 657(2000).

> Rather, as the Constitution's structure, its history, and the authoritative interpretations by this Court make clear, the State's immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the constitution, and which they retain today (either literally or by virtue of their admission into the Union upon an equal footing with the other States) except as altered by the plan of the Convention or certain constitutional Amendments.

*Alden*, 527 U.S. at 713.  In *Alden*, the Supreme Court held that sovereign immunity protected a non-consenting State from an action brought against it in State Court under the Fair Labor Standards Act. *See also In re Mitchell*, 209 F.3d 1111 (9th Cir. 2000) (holding that an adversary proceeding in bankruptcy court by a Chapter 7 debtor against two State agencies, seeking to determine the dischargeability of a state tax debt, was barred by the Eleventh Amendment). Accordingly, our inquiry in this case is not constrained by the literal words of the Eleventh Amendment, which speak only of the "Judicial power of the United States." Instead, our analysis must encompass the broader, historical concept of sovereign immunity. As the Fourth

---

[1] As the Supreme Court discussed in *Alden*, 527 U.S. At 715-21, the Eleventh Amendment was adopted in response to the Supreme Court's decision in *Chisholm v. Georgia*, 2 Dall. 419 (1973), in which the Court held, just five years after the Constitution was adopted, that Article III authorized a private citizen of another state to sue the State of Georgia without its consent. Congress reacted to this "unexpected blow to state sovereign," *Alden*, 527 U.S. At 720, by adopting the eleventh Amendment which was intended to restore, not to change, the original constitution design. Id . at 721. "By its terms, then, the Eleventh Amendment did not redefine the federal judicial power but instead overruled the Court." Id. at 722.

Circuit held in *South Carolina State Ports Authority v. Federal Maritime Commission*, ___F.3d___, 2001 WL 243218 (4th Cir. 2001), *Alden* makes clear that the States' sovereign immunity applies to adversarial proceedings brought by a private party against a non-consenting State, regardless of the forum. 2001 WL 243218, at *3. Thus, "[i]n short, unless waived or validly abrogated,[2] immunity bars the assertion or adjudication of claims made against a state by a private party and it protects a state from being required to appear and defend itself against such claims regardless of the forum in which those claims are made." *State of Rhode Island Dept. Environmental Management v. United States*, 115 F.Supp.2d 269, 274 (D.R.I. 2000).

For a lawsuit against a state based on a state statute, federal statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, there must be clear language evidencing an intention to subject the state to suit in federal court. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 240 (1985).

### 1.  Plaintiff's 1981 Claim

According to numerous courts in the Second Circuit, the Eleventh Amendment bar to suits against the state applies to section 1981 claims. *Yoonessi v. State Univ. of New York*, 56 F.3d 10 (2d Cir. 1995); *Reed v. State of Connecticut Department of Transportation*, 2000 U.S. Dist. Lexis *6271 (D.Conn. 2000); Chada v. Connecticut Medical Examining* Board, 1999 U.S. Dist. Lexis 18939 (D.Conn. 1999); *Daisernia v. State of New York Department of Corrections*, 582 F.Supp. 792, 799, 803 (N.D.N.Y. 1984) (Section 1981 does not abrogate the sovereign immunity of the states).

---

[2]  There are two well-settled exceptions to State sovereign immunity from private suits -- when a State unequivocally waives its sovereign immunity and when there has been a valid abrogation by Congress of the States' sovereign immunity pursuant to its powers under the Fourteenth Amendment. *See Seminole Tribe of Florida*, 517 U.S. at 55, 65.

6

In a recent case from this district, *Reed v. State of Connecticut Department of Transportation, supra*, this Court dismissed a plaintiff's § 1981 claim arising from an adverse employment decision denying him a promotion. In so ruling, this court stated:

> Similarly, the Eleventh Amendment bars suits for money damages against the states, state agencies and state officials under Section 1981. [citations omitted] . . . Any claims of the plaintiff seeking monetary recovery under 42 U.S.C. § 1981 against these defendants are accordingly dismissed.

*Id.* at p. 4.

Although the *Reed* case also involved some individual defendants, the argument for dismissal in the present is even stronger because the only defendant is the State of Connecticut itself, which may not be sued directly for either equitable or monetary relief.

### C. PLAINTIFFS' CLAIMS FOR THE NEGLIGENT INFLICATION OF EMOTIONAL DISTRESS ARE BARRED BY THE ELEVENTH AMENDMENT AND CONN. GEN. STAT. § 4-165.

This Court, in its earlier ruling on the defendant's Motion to Dismiss, dismissed plaintiffs Common Law action for negligent infliction of emotional distress against the defendant State of Connecticut. In her amended complaint plaintiff seeks to bring this cause of action against two individual defendants. The defendants assert that both the Eleventh Amendment and Conn. Gen. Stat. § 4-165 bar this claim as against the two individual state defendants.

There is no legislative authority for the proposition that the state has waived its Eleventh Amendment immunity to suits in federal court for the common law claim asserted here. See, Gaynor v. Martin, 77 F.Supp.2d 272, 281 (D.Conn. 1999) (state law claims for breach of warranty and emotional distress dismissed for lack of jurisdiction).

Connecticut law has long recognized the common law doctrine that the state may not be sued without its consent. Since the state can only act through its officers and agents, a suit against a state officer is effectively a suit against the state itself. Horton v. Meskill, 172 Conn.

7

615, 623, 376 A.2d 359 (1977). Absent legislative authority, the courts must decline to permit any monetary award against the state or its officials acting within the scope of their employment. There are three instances in which the state or its agents may be sued. There are when: (1) the state has expressly waived sovereign immunity through legislation or by consenting to suit; (2) an action merely seeks declaratory or injunctive relief based on a claim of constitutional violation; or (3) an action seeks declaratory or injunctive relief based on a claim that an official exceeded his statutory authority. White v. Burns, 213 Conn. 307, 312, 567 A.2d 1195 (1990).

This principle is further supported by the common law precedent that the state is not liable under the doctrine of respondeat superior for the negligence of their officers, servants and agents in the performance of their governmental functions. Bergner v. State, 144 Conn. 282, 285 (1937); Hewison v. New Haven, 37 Conn. 475, 483 (1871); Pope v. New Haven, 91 Conn. 79, 80, 99 A. 51(1916). It is within this historical context that in 1959 the legislature enacted a statutory procedure for waiving the state immunity to suits for damages. The General Assembly established the Office of the Claims Commissioner, for the adjudication of claims against the state or for permission to sue the state. See Conn. Gen. Stat. §§ 4-141, 4-158, 4-160.

Through this statutory enactment, a cause of action against the state for the negligent conduct of its employees is now exclusively recognized and controlled by Conn. Gen. Stat. § 4-160[3]. However, the state's waiver of its sovereign immunity does not provide for a direct legal action against the state. Before suit may be filed, permission to sue the state must be obtained by a claimant using the statutory procedure outlined in Conn. Gen. Stat. § 4-147 through 4-158. Section 4-160 explicitly states:

---

[3] State employees enjoy absolute statutory immunity from suits against them individually for negligent acts caused in the discharge of their duties or within the scope of their employment. Conn. Gen. Stat. § 4-165.

8

> When the Claims Commissioner deems it just and equitable, he may authorize suit against the state on any claim which, in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable.

Conn. Gen. Stat. § 4-160.

Since in the present action the Plaintiffs do not allege facts demonstrating consent from the Claims Commissioner to bring an action against the state for the negligent conduct of any state officials, their claim against the defendants in their official capacities must be dismissed.

With respect to the defendants being sued in their individual capacities for the negligent infliction of emotional distress, the defendants enjoy statutory immunity from personal liability for negligent acts. Conn. Gen. Stat. § 4-165, states in part:

> No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within The scope of his employment. Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter. . .

Conn. Gen. Stat. § 4-165. In the recent case of Barstow v. Shea, 2002 U.S. Dist. LEXIS 5741 (D. Conn. 2002), the plaintiff sued the defendant alleging that she was subjected to an unlawful seizure and was denied equal protection under the law. She also alleged common law claims for the negligent and intentional infliction of emotional distress. In dismissing the negligent infliction of emotional distress claim against the defendant in her individual capacity, the court noted that other than for intentional conduct, the defendant was immune from personal liability pursuant to Conn. Gen. Stat § 4-165.

In the present case, the plaintiffs have also alleged causes of action for the intentional infliction of emotional distress, and therefore Count Four for the negligent infliction of emotional distress against the defendants individually, is both superfluous and barred by § 4-165.

9

IV. **CONCLUSION**

For the foregoing reasons, the defendants submit that their Motion to Dismiss should be granted.

                                         DEFENDANT,
                                         STATE OF CONNECTICUT,
                                         DEPARTMENT OF CORRECTION

                                         RICHARD BLUMENTHAL
                                         ATTORNEY GENERAL

BY: _____
       Jane B. Emons
       Assistant Attorney General
       Federal Bar No. 16515
       55 Elm Street - P.O. Box 120
       Hartford, CT 06141-0120
       Tel: (860) 808-5340
       Fax: (860) 808-5383
       Email: jane.emons@po.state.ct.us

**CERTIFICATION**

I hereby certify that a copy of the foregoing Defendant's Motion to Dismiss Amended Complaint, was mailed this 13th day of January, 2004, first class postage prepaid to:

W. Martyn Philpot, Jr., Esq.
Marc L. Glenn. Esq.
W. Martyn Philpot, Jr., LLC
409 Orange Street
New Haven, CT 06511-6406

Eunice Smith
P. O. Box 975
Hartford, CT 06143

                                      _____
                                        Jane B. Emons
                                        Assistant Attorney General