**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| EUNICE SMITH, | : | CIVIL ACTION NO. 3:03CV00386(AWT) |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, | : | |
| DEPARTMENT OF | : | |
| CORRECTION, ET AL. | : | |
| *Defendants* | : | NOVEMBER 10, 2005 |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION**
**FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S**
**AMENDED COMPLAINT DATED DECEMBER 14, 2004**

**I.    INTRODUCTION**

The plaintiff, Eunice Smith, brought two separate actions against the State of

Connecticut, Department of Correction, alleging *inter alia*, that she has suffered

discrimination in the work place on account of her race.  Those two cases were

consolidated and transferred to this Court on February 22, 2004.  This case has a lengthy

and complicated history and has taken a similar path though the court system, owing, in

part to numerous appearances and withdrawals by various counsel.  In response to the

Defendants Motion for More Definite Statement that was granted by the Court on March

23, 2004, the plaintiff, on December 14, 2004, filed a 39 page, 193 paragraph, 8 Count

Amended Complaint.

At this time, the Defendants will refrain from an attempt to argue summary judgment on the many trivial factual issues alleged.  Rather, the purpose of this motion is to narrow the legal issues for trial and, thereby, narrow the factual issues that may, ultimately, be relevant at trial.

**II.     FACTS**

The defendants incorporate their Local Rule 56(a)(1) Statement of Material Facts Not in Dispute as submitted herein in support of their Motion for Summary Judgment.

**III.     STANDARD OF REVIEW**

A motion for summary judgment is granted when there is no genuine issue or dispute as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) [hereinafter Celotex]; Larkin v. Town of West Hartford, 891 F.Supp. 719, 723 (D.Conn. 1995) [hereinafter Larkin].  A dispute over a material fact exists if the evidence would allow a reasonable jury to return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The burden is on the moving party to demonstrate the absence of any material fact genuinely in dispute.  American Int'l Group Inc. v. London American Int'l Corp., 664 F.2d 348, 351 (2d. Cir. 1981).  However, "summary judgment must be entered against 'a party who fails ... to establish the existence of an element essential to [its] case, and on which it will bear the burden of proof at trial,'" Larkin, 891 F. Supp. at 723 quoting Celotex, 477 U.S. at 322.

This court has held:

> In deciding whether there is a genuine issue of material fact, the court must draw all reasonable inferences in favor of the non-moving party. <u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed2d 202 (1986). Not every factual dispute will defeat a motion for summary judgment; a factual issue must be both "genuine" and "material." <u>Id.</u> at 247-48, 106 S.Ct. at 2509-10 (emphasis omitted). A factual issue is not "genuine" unless "the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Id.</u> at 248, 106 S.Ct. at 2510. A factual issue is not "material" unless it "might affect the outcome of the suit under the governing law." <u>Id.</u>

<u>Larkin</u>, 891 F.Supp. at 723-24.

Rule 56(c) "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment: the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty</u>, 477 U.S. at 247-48. Generally speaking, summary judgment is inappropriate where an individual's intent or state of mind are at issue. <u>Patrick v. LeFevre</u>, 745 F.2d 153, 159 (2d. Cir. 1984).

Summary judgment is available to defendants in discrimination cases. As the Second Circuit held in <u>Meiri v. Dacon</u>, 759 F.2d 989 (2d Cir.) <u>cert. denied</u>, 474 U.S. 829 (1985), in granting summary judgment for the defendants.

> In so concluding, we are of course mindful that summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated. The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion. Indeed, the salutary purposes of summary judgment - avoiding protracted, expensive and harassing trials - apply no less to discrimination cases than to commercial or other areas of litigation.

Id. at 998 (citations omitted); accord Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 40 (2d Cir. 1994).

To defeat the motion, the nonmoving party must show more than that "some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 , 586, 106 S.Ct. 1348, 1356 (1986). "A party may not 'rely on mere speculation or conjecture as to the true nature of facts to overcome a motion for summary judgment.'" McCloskey v. Union Carbide Corp., 815 F.Supp. 78, 81 (D.Conn. 1993) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12, (2d. Cir. 1986) cert. denied, 480 U.S. 932 (1987). The "party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial for in doing so he risks the possibility that there will be no trial." Meiri v. Dacon, 759 F.2d at 998.

IV.    **ARGUMENT**

    A.    **THE PLAINTIFF'S TITLE VII ACTION AGAINST INDIVIDUAL DEFENDANTS DOES NOT STATE A VIABLE LEGAL CLAIM.**

The plaintiff has asserted her Title VII claims in Count I as to all defendants. In Count II, plaintiff's Title VII retaliation allegations do not clearly specify which "defendant" is responsible for the alleged conduct. In 1995, the Second Circuit Court of Appeals held that there is no individual liability under Title VII in Tomka v. Seiler, 66 F.3d 1295, 1313 (2d. Cir. 1995).

The rationale for this decision rests with the definition of the term "employer", which limits liability to employers with 15-20 employees. Our circuit adopted the following analysis when it first determined that there was no individual liability under Title VII:

> "[C]ongress did not want to burden small entities with the costs associated with litigating discrimination claims.  If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees."

Tomka, 66 F.3d at 1314, quoting Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587 (9th Cir. 1993), cert. denied ___ U.S. ___, 114 S.Ct. 1049 (1994).  Under Tomka v. Seiler Corp., 66 F.2d 1314, the Second Circuit concluded "that Congress never intended to hold agents [of employers] individually liable for Title VII violations."  See also, McBride v. Routh, 51 F. Supp. 2d 153 (D. Conn. 1999)(State official could not be held individually liable in her official capacity under Title VII).  There is no individual liability against supervisory employees under Title VII and therefore the plaintiff's Title VII claims against the individually named defendants should be dismissed.

  **B. THE PLAINTIFF'S CAUSES OF ACTION IN COUNTS THREE, FOUR AND FIVE AGAINST THE STATE OF CONNECTICUT FOR DISCRIMINATION AND RETALIATION UNDER 42 U.S.C. § 1983 AND CONSPIRACY UNDER 42 U.S.C. § 1985 ARE BARRED BY THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

  The Eleventh Amendment to the United States Constitution bars a suit in federal court against a state or one of its agencies for equitable or legal relief unless the state has expressly consented to be sued, or Congress explicitly abrogates state immunity. Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 99-100 (1984).  Dube v. State of New York, 900 F.2d 587, 594 (2d Cir. 1990); Daisernia v. State of New York, 582 F.Supp. 792 (N.D.N.Y. 1984)  There is no dispute that one of the named defendants in this case, the Connecticut Department of Correction is a state agency.

The doctrine of State sovereign immunity and its breadth vis-à-vis the Eleventh Amendment have been discussed at length in several recent Supreme Court decisions. See Alden v. Maine, 527 U.S. 706 (1999); Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996); *see also* Board of Trustees of the University of Alabama v. Garrett, _____ U.S. _____, 121 S. Ct. 955 (Feb. 21, 2001) (discussing Congressional abrogation of a State's sovereign immunity in the context of the Americans With Disabilities Act); Kimel v. Florida Board of Regents, 528 U.S. 62 (Jan. 11, 2000) (discussing Congressional abrogation under the Fourteenth Amendment of a State's sovereign immunity and express waiver by a State).

The doctrine of State sovereign immunity finds expression in the Eleventh Amendment, which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or in equity, commenced or prosecuted against one of the United States by Citizens of another State, or by citizens or Subjects of any Foreign State." However, in interpreting the scope of the States' constitutional immunity from suit, the Supreme Court has looked to the historical concept of State sovereign immunity rather than adhering to the literal wording of the Eleventh Amendment. Thus, in Hans v. Louisiana, 134 U.S. 1, 14-15 (1890), the Court held that sovereign immunity barred a citizen from suing his own State under the federal question head of jurisdiction. Moreover, it is well settled that State immunity extends not only to the States but also to State agencies and to State officers who act on behalf of the State. *See* Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc. , 506 U.S. 139, 142-47 (1993); Farricielli v. Holbrook, 215 F.3d 241, 245 (2d Cir. 2000).

Although State sovereign immunity is often referred to as "Eleventh Amendment Immunity," the Supreme Court has recently reaffirmed that a State's sovereign immunity far exceeds the literal words of the Eleventh Amendment. As the Supreme Court explained, the phrase "Eleventh Amendment Immunity" is "a convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from nor is limited by the terms of the Eleventh Amendment".[1] Alden, 527 U.S. at 713; *see also* Burnett v. Carothers, 192 F.3d 52, 55-56 n.1 (2d Cir. 1999), *cert. denied*, 121 S. Ct. 657 (2000).

> Rather, as the Constitution's structure, its history, and the authoritative interpretations by this Court make clear, the State's immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the constitution, and which they retain today (either literally or by virtue of their admission into the Union upon an equal footing with the other States) except as altered by the plan of the Convention or certain constitutional Amendments.

Alden, 527 U.S. at 713. In Alden, the Supreme Court held that sovereign immunity protected a non-consenting State from an action brought against it in State Court under the Fair Labor Standards Act. *See also* In re Mitchell, 209 F.3d 1111 (9th Cir. 2000) (holding that an adversary proceeding in bankruptcy court by a Chapter 7 debtor against

---

[1]    As the Supreme Court discussed in Alden, 527 U.S. at 715-21, the Eleventh Amendment was adopted in response to the Supreme Court's decision in Chisholm v. Georgia, 2 Dall. 419 (1973), in which the Court held, just five years after the Constitution was adopted, that Article III authorized a private citizen of another state to sue the State of Georgia without its consent. Congress reacted to this "unexpected blow to state sovereign," Alden, 527 U.S. at 720, by adopting the Eleventh Amendment which was intended to restore, not to change, the original constitution design. Id. at 721. "By its terms, then, the Eleventh Amendment did not redefine the federal judicial power but instead overruled the Court." Id. at 722.

two State agencies, seeking to determine the dischargeability of a state tax debt, was barred by the Eleventh Amendment).  Accordingly, our inquiry in this case is not constrained by the literal words of the Eleventh Amendment, which speak only of the "Judicial power of the United States."  Instead, our analysis must encompass the broader, historical concept of sovereign immunity.  As the  Fourth Circuit held in <u>South Carolina State Ports Authority v. Federal Maritime Commission</u>, ____F.3d____, 2001 WL 243218 (4th Cir. 2001), <u>Alden</u> makes clear that the States' sovereign immunity applies to adversarial proceedings brought by a private party against a non-consenting State, regardless of the forum.  2001 WL 243218, at *3.  Thus,  "[i]n short, unless waived or validly abrogated,[2] immunity bars the assertion or adjudication of claims made against a state by a private party and it protects a state from being required to appear and defend itself against such claims regardless of the forum in which those claims are made."   <u>State of Rhode Island Dept. Environmental Management v. United States</u>, 115 F.Supp.2d 269, 274 (D.R.I. 2000).

For a lawsuit against a state based on a state statute, federal statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, there must be clear language evidencing an intention to subject the state to suit in federal court. <u>Atascadero State Hospital v. Scanlon</u>, 473 U.S. 234, 240 (1985).

---

[2]     There are two well-settled exceptions to State sovereign immunity from private suits – when a State unequivocally waives its sovereign immunity and when there has been a valid abrogation by Congress of the States' sovereign immunity pursuant to its powers under the Fourteenth Amendment.  *See* <u>Seminole Tribe of Florida</u>, 517 U.S. at 55, 65.

To the extent that the State of Connecticut has not waived its sovereign immunity in this matter, all claims in Counts Three, Four and Five against the State of Connecticut for either equitable or monetary relief should be dismissed.

### C.     PLAINTIFF'S CLAIMS AGAINST INDIVIDUAL DEFENDANTS FOR RETALIATION UNDER 42. U.S.C. § 1983 FAIL TO STATE A CAUSE OF ACTION.

In the Second Circuit, a claim under 42 U.S.C. § 1983 may be brought concurrently with Title VII only if the § 1983 claim is based upon a violation of a distinct constitutional or other federal statutory right.  Gierlinger v. New York State Police, 15 F.3d 32, 34 (2d Cir. 1994); Saulpaugh v. Monroe Community Hospital, 4 F.3d 134, 143 (2d Cir. 1993), *cert. denied*, 510 U.S. 1164, 114 S. Ct. 1189 (1994).  A "plaintiff cannot use Section 1983 to gain perceived advantages not available to a Title VII claimant, but he can assert a claim under Section 1983 if some other law other than Title VII is the source of the right alleged to have been denied."  Saulpaugh, 4. F.3d at 143 (internal citations omitted.).  Because the Equal Protection Clause does not include a retaliatory conduct theory of liability, Title VII provides the exclusive remedy over retaliation claims**.** E.g.,  Moche v. City University of New York, 781 F. Supp. 160, 167-169 (E.D.N.Y. 1992), *aff'd.* without opinion, 999 F.2d 538 (2d Cir. 1993; Long v. Laramie County Community College Dist., 840 F.2d 743, 752 (10th Cir. 1988), *cert. denied* 488 U.S. 825 (1988); Day v. Wayne County Bd. of Auditors, et al, 749 F.2d 1199, 1204 (6th Cir. 1984); Lewis v. State of Delaware Department of Public Instruction, 986 F. Supp. 848, 857 (D. Del. 1997); Messer v. Meno, 936 F.  Supp. 1280, 1292 (W.D.Tex. 1996); Arnett v. Davis County School District, 1993 U.S. Dist. LEXIS 19088 (D. Utah, Central

Div. 1993) (attached hereto); See also <u>Price v. Delaware Dept. of Correction</u>, 40 F. Supp.

2d 544, 556-58 (D.Del. 1999) (overturned jury verdicts against two supervisors when

sole basis for § 1983 claim was a Title VII retaliation claim); <u>Lightner v. Town of Ariton,</u>

<u>Alabama, et al</u>., 902 F.Supp. 1489 (Middle Dist. Ala., So. Div).

  In <u>Lewis</u>, the plaintiff, an African-American employee, brought an employment

discrimination action under Title VII, § 1983, and § 1981 against the State of Delaware

Department of Public Instruction and state officials alleging that he was denied a

promotion because of his race and national origin and in retaliation for filing a charge of

discrimination with the Equal Employment Opportunity Commission ("EEOC"). <u>Lewis</u> ,

986 F. Supp. 848.  The plaintiff argued that he could proceed with his retaliation claims

under § 1983 in that he was claiming a denial of equal protection.  The Court, however,

examined the retaliation language of Title VII (42 U.S.C. § 2000e-3) and found:

> Such language is obviously absent from the equal protection clause of the
> Fourteenth Amendment; however, the crucial question is whether the equal
> protection clause can be construed to cover retaliation claims as they are defined
> under Title VII.
>
>  This Court is guided by the case of <u>Smith v. Robinson</u> , 468 U.S.
> 992, 1012, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984), where the
> Supreme Court declared that, "We do not lightly conclude that Congress
> intended to preclude reliance on § 1983 as a remedy for a substantial equal
> protection claim….Nevertheless, § 1983 is a statutory remedy and
> Congress retains the authority to repeal it or replace it with an alternative
> remedy.  The crucial consideration is what Congress intended." **In these
> types of actions, the issue then is whether, in employment actions, an
> equal protection claim under section 1983 was expressly replaced with
> an alternative remedy; that is, the Title VII anti-retaliatory provision.**
>
> The Court is counseled by <u>Great American Federal Savings & Loan Ass'n
> v. Novotny</u>, 442 U.S. 366, 375-76, 99 S.Ct. 2345, 2350-51, 60 L.Ed.2d
> 957.  In <u>Novotny</u>, the Supreme Court considered whether § 1985(3), a
> conspiracy statute which like § 1983 does not create substantive rights,

could be used to assert a retaliation violation under Title VII. The
Supreme Court commented that if the plaintiff was allowed to bring the
Title VII retaliation claim under § 1985(3), "the complainant could
completely bypass the administrative process, which plays such a crucial
role in the scheme established by Congress in Title VII." Id. Similarly, if
Lewis could bring his Title VII retaliation claim under the guise of an
equal protection claim brought under § 1983, the administrative process
that plays such a crucial role in the Title VII scheme would be bypassed
and Congress' intent frustrated.

In addition, circuits which have considered this very same question
have determined retaliation in the workplace by an employer is an action
best remedied exclusively through Title VII. See Moche v. City
University of New York, 781 F. Supp. 160 (E.D.N.Y. 1992), aff'd without
opinion, 999 F.2d 538 (2d Cir. 1993); Long v. Laramie County
Community College Dist., 840 F.2d 743, 752 (10th Cir.), cert. denied, 488
U.S. 825, 109 S. Ct. 73, 102 L.Ed.2d 50 (1988); Day v. Wayne County
Bd. of Auditors, 749 F.2d 1199, 1205 (6th Cir. 1984). Persuaded by this
line of authority, **the Court holds that Lewis' § 1983 retaliation action
is not actionable under the equal protection clause of the Fourteenth
Amendment. Instead, this claim is more properly remedied through
Title VII.**

Lewis, 986 F.Supp. at 857 (footnotes omitted, emphasis added).

In the case at bar, plaintiff's allegations of retaliation are all firmly grounded in

Title VII, and, thus, are improperly also brought under § 1983. Plaintiff's § 1983

retaliation claims should be dismissed in their entirety.

> **D.    THE PLAINTIFF'S CLAIMS OF CONSPIRACY AGAINST THE
> INDIVIDUAL DEFENDANTS IN VIOLATION OF 42 U.S.C. § 1985
> FAIL TO STATE A CAUSE OF ACTION.**

In Count Five of plaintiff's complaint, plaintiff alleges "Defendants acted in

concert to effect the retaliation of termination against Plaintiff described above based

upon the Plaintiff's race and color" (Complaint § 179) and "In so doing, Defendants

acted as a conspiracy in violation of 42 U.S.C. § 1985" (Complaint ¶ 180).

Plaintiff's § 1985 claim must be dismissed on the grounds that (1) plaintiff's allegations of a conspiracy are conclusory only and do not provide sufficient factual support to state a claim, and/or (2) defendants cannot, as a matter of law, conspire with themselves as they are all employees of the department of Correction.

      **1.      The Plaintiff Has Failed to State the Necessary Elements of a 42 U.S.C. § 1985 Claim.**

In order to state a violation of Section 1985, the plaintiff must allege that (1) the defendants were part of a conspiracy; (2) the conspiracy was for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities of the laws; (3) the defendants participated in an overt act in furtherance of the conspiracy; and (4) said act caused a person to be injured either in his person or property or deprived of any right or privilege of a citizen of the United States.  Thomas v. Roach, 165 F.3d 137, 147 (2d Cir. 1999)(citing Traggis v. St. Barbara's Greek Orthodox Church, 851 F.2d 584, 586-87 (2d Cir. 1988), citing Griffin v. Breckenridge, 403 U.S. 88, 102-03, 29 L.Ed.2d 338, 91 S. Ct. 1790 (1970)). See also Brown v. Oneonta, 221 F.3d 329, 341 (2d Cir. 2000), cert denied, 534 U.S. 816 (2001)("The conspiracy must be motivated by racial animus.").

In order to maintain an action under Section 1985, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."  Webb v. Goord, 340 F.3d 105, 111 (2d Cir. 2003).

Here, plaintiff does not allege, except in the most conclusory fashion, that any meeting of the minds occurred among any or all of the defendants for any purpose. See, Boddie v. Schneider, 105 F.3d 857, 862 (2d Cir. 1997)(dismissal of "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights" is proper).

### 2.    The Intracorporate Doctrine Bars Plaintiff's Conspiracy Claim.

The plaintiff has failed to allege a conspiracy because the plaintiff has challenged conduct by three individual employees acting on behalf of a single institution and within the scope of their employment. The Second Circuit and its district courts have applied the intracorporate conspiracy exception to bar conspiracy claims against single institutions acting through their agents. See, e.g. Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978) (exception applied to conspiracy claim against Brooklyn Law School and its trustees and employees) citing Girard v. 94th Street and Fifth Avenue Corp., 530 F.2d 66 (2d Cir. 1976); Cole v. University of Hartford, et al., 391 F. Supp. 888, 893-94 (D. Conn. 1975) ("[s]imply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation); Ericson v. Syracuse University, 35 F. Supp.2d 326 (S.D.N.Y. 1999) ("since a corporation or other institution (like Syracuse University) can only act through its agents, a claim that the agents collectively agreed to take some unlawful action in the name and on behalf of the corporation is simply another way of saying that the corporation acted unlawfully and therefore does not satisfy the basic requirements of a

conspiracy.  [citation omitted.]"); <u>McEvoy v. Spencer</u>, 49 F. Supp.2d 224 (S.D.N.Y.

1999) (defendants cannot conspire with each other as they are a single entity).

 Other jurisdictions have also applied the intracorporate conspiracy doctrine to

deny conspiracy claims.  <u>E.g.</u> <u>Wright v. Ill. DCF</u>, 40 F.3d 1492, 1507-09 (7th Cir. 1994)

(§ 1985(2) charge against DCF administrators of conspiracy to retaliate against social

worker failed as intracorporate conspiracy doctrine barred conspiracy claim against

individual members of single governmental entity); <u>Hartman v. Bd. of Trustees of</u>

<u>Community College District 508</u>, 4 F.3d 465, 470 (7th Cir. 1993) (alleged agreement by

supervisors of employee-plaintiff of public colleges organization was not a conspiracy

within 1985 due to intracorporate doctrine); <u>Hull v. Cuyahoga Valley Bd of Ed</u>., 926 F.2d

505, 509-10 (6th Cir. 1991) (employees and agents of public school board, i.e. school

district superintendent, executive director of district, and school administrators, are

members of same collective entity - not separate persons able to form conspiracy);  <u>Doe</u>

<u>v. Bd. of Ed. of Hononegah School District 207</u>, 833 F. Supp. 1366, 1381-82 (N.D. Ill.

1993) (conspiracy claim under § 1985(2) barred as against public school administrators

and school counselors sued in both official and individual capacity based on

intracorporate conspiracy doctrine).

 The defendants in this case are all agents of a single agency, Department of

Correction.  The general rule is that two entities must exist to establish a conspiracy and §

1985(3) is not violated by discussions, agreements, or actions taken between two or more

individuals who serve the same entity.  <u>See</u>, <u>e.g.</u>, <u>Dickerson v. Alachua County Comm'n</u>,

200 F.3d 761, 768 (11th Cir. 2000); <u>Wright v. Illinois Dep't of Children and Families</u>

14

Servs., 40 F.3d 1492 (7th Cir. 1994); Herrmann v. Moore, 576 F.2d 453 (2d Cir.), cert. denied 439 U.S. 1003 (1978).  Therefore, the intracorporate conspiracy doctrine bars the § 1985 conspiracy claim in its entirety.

The plaintiff must also allege that the defendants acted other than in the normal course of their corporate duties.  Cole, 391 F. Supp. at 893-94 [citations omitted].  Charges that unlawful action was taken by using one's position is a claim of conduct within defendants' official capacity.  Syracuse University, 35 F. Supp. 2d at 326.  Therefore, the plaintiff has alleged no facts that can constitute a conspiracy.  The Second Circuit in Herrmann v. Moore, 576 F.2d at 459 held that the defendants, all trustees and employees of the Brooklyn Law School, shown not to have any purpose to further plaintiff's discharge, were all acting for the school in connection with the plaintiff's discharge, and therefore, were entitled to summary judgment.

The intracorporate doctrine immunity is not destroyed simply because the agents are sued in their individual capacity.  Buschi v. Kirven, 775 F.2d 1240 (4th Cir. 1985).  The court in Buschi quoted Cole v. University of Hartford , 391 F. Supp. 888, 893 (D. Conn. 1975):

Simply joining corporate officers as defendants in their individual capacities is not enough to make them persons separated from the corporation in legal contemplation.  The plaintiff must also allege that they acted other than in the normal course of their corporate duties.  Id. at 1252.  Similarly, in Eggleston v. Prince Edward Volunteer Rescue Squad, Inc., 569 F. Supp. 1344, 1352 (E.D.Va. 1983), the court held that members of the Rescue Squad who allegedly expelled the plaintiff for his speech could

not be held to establish a conspiracy under § 1985 because they acted in furtherance of their responsibilities.

    For all these reasons, plaintiff fails to state a § 1985 claim in Count Five.

    **E.    PLAINTIFF'S CLAIMS UNDER THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT IN COUNTS SIX AND SEVEN ARE BARRED BY THE ELEVENTH AMENDMENT.**

    The plaintiff directs allegations against "defendants" in Count Six and "Defendant" in Count Seven of violations of the Connecticut Fair Employment Practices Act (CFEPA), Section 46a-58(a) in Count Six of her Complaint and Section 46a-60(a)(4) in Count Seven of her Complaint. In enacting the Connecticut Fair Employment Practices Act (hereinafter "CFEPA"), Conn. Gen. Stat. § 46a-59 et seq., the State of Connecticut did not waive its Eleventh Amendment immunity to suits in federal court. "In Connecticut, we have long recognized the validity of the common-law principle that the state cannot be sued without its consent and that since the state can act only through its officers and agents a suit against a state officer is in effect one against the sovereign state." Horton v. Meskill, 172 Conn. 615, 623, 376 A.2d 359 (1977). See also White v. Burns , 213 Conn. 307, 312, 567 A.2d 1195 (1990); Krozser v. New Haven, 212 Conn. 415, 420, 562 A.2d 1080 (1989); Fetterman v. University of Connecticut, 192 Conn. 539, 550-51, 473 A.2d 1176 (1984).

    Sections 46a-99 and 46a-100 expressly limit suits to redress violations of CFEPA by state instrumentalities to actions brought in the state Superior Courts. Section 46a-100 states:

Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with section 46a-82 and who has obtained a release from the commission in accordance with section 46a-83 or 46-101, **may also bring an action in the superior court for the judicial district in which the discriminatory practice** is alleged to have occurred or in which the respondent transacts business, except any action involving a state agency or official may be brought in the judicial district of Hartford.

Conn. Gen. Stat. § 46a-100 (emphasis added).

The issue of the state's waiver of its immunity for redress of unfair employment practices in federal courts was addressed by this court in the case of Walker v. State of Connecticut, 106 F.Supp. 2d 364 (D.Conn. 2000). In Walker, a former deputy sheriff sued the department and county officials for the alleged discriminatory practices prohibited by Title VII of the Civil Rights Act of 1964. Included within the plaintiff's federal lawsuit were several causes of action for violations of CFEPA. In granting the defendant's motion to dismiss the state law claims, the court stated:

Counts Four and Eight of the Complaint allege violations of the CFEPA. The only way Plaintiff may bring a CFEPA claim in federal court against the State is by the consent of the State to be sued in that forum. The State has waived its immunity, but only as to cases brought in the Superior Court. Conn. Gen. Stat. Section 46a-99 provides that:

Any person claiming to be aggrieved by a violation of any provision of sections 46a-70 to 46a-78, in-inclusive, may petition the **superior court** for appropriate relief and **said court** shall have the power to grant such relief, by injunction or otherwise, as it deems just and suitable. (Emphasis added).

'A state does not consent to suit in federal court by consenting to suit in the courts of its own creation.' *Smith v. Reeves*, 178 U.S. 436, 441-445, 20 S. Ct. 919, 44 L.Ed. 1140, (1900). This Court declines Plaintiff's invitation to hold that simply because the State has consented to be sued in state court, it *a fortiori* must have meant to consent to federal jurisdiction also. '[I]t is not consonant with our dual system for the federal courts. . .to read the consent to embrace federal as well as state

courts . . .[A] **clear declaration** of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found.' *Great Northern Life Insurance Co. v. Read*, 322 U.S. 47, 54, 64 S.Ct 873, 88 L.Ed. 1121 (1944)(empahsis added), *quoted in Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99-100n. 9, 104 S.Ct 900, 79 L.Ed.2d 67 (1983). The Court believes that the wording of the Connecticut statute, quoted verbatim, is the antithesis of the clear declaration mandated by *Great Northern*. Summary judgment will be granted on the CFEPA claims as to the State and all Defendants in both their individual and official capacities, as this Court lacks jurisdiction over the parties based on the clear reading of the statue.

Id. at 370 (emphasis added.)

The reasoning in Walker is equally applicable to the present case. The plaintiff's state law claims predicated on violations of CFEPA are barred by the doctrine of sovereign immunity and may not be brought in federal court by virtue of the Eleventh Amendment.

The United States Supreme Court has also found that pendent jurisdiction does not override the Eleventh Amendment in cases against States based on state law.

As noted, the implicit view of these cases seems to have been that once jurisdiction is established on the basis of a federal question, no further Eleventh Amendment inquiry is necessary with respect to other claims raised in a case. This is an erroneous view and contrary to the principles established in our Eleventh Amendment decisions. The Eleventh Amendment is an explicit limitation to the judicial power of the United States.' Missouri v. Fiske, 290 U.S. at 25, 54 S.Ct., at 20. It deprives a federal court of power to decide certain claims against States that otherwise would be within the scope of Art. III's grant of jurisdiction....This constitutional bar applies to pendent claims as well. As noted above, pendent jurisdiction is a judge-made doctrine of expediency and efficiency derived from the general Art. III language conferring power to hear all 'cases' arising under federal law or between diverse parties. See Mine Workers v. Gibbs, 383 U.S. At 725, 86 S.Ct at 1138. See also Hagans v. Lavine, supra, 415 U.S. At 545, 94 S.Ct. At 1383(terming pendent jurisdiction 'a doctrine of discretion'). The Eleventh Amendment should not be construed to apply with less force to this implied form of jurisdiction than it does to the explicitly granted power to hear federal

claims... In sum, contrary to the view implicit in decisions such as <u>Greene v. Louisville & Interurban R.Co.</u>, 244 U.S. 499, 37 S.Ct 673, 61 L.Ed.2d 1280 (1917), neither pendent jurisdiction not any other basis of jurisdiction may override the Eleventh Amendment...We now hold that this principle applies as well to state-law claims brought into federal court under pendent jurisdiction.

<u>Pennhurst State School and Hospital v. Halderman</u>, 465 U.S. 89, 119-121, 104 S. Ct 900, 79 L.Ed.2d 67 (1884).  The Second Circuit has recognized the Eleventh Amendment bar to the exercise of pendent jurisdiction over state law claims involving state officers consistent with <u>Pennhurst</u>.  E.g., <u>Baker v. Coughlin</u>, 77 F.3d 12, 15 n.3 (2d Cir. 1996); <u>Almendral v. New York State Office of Mental Health</u>, 743 F.2d 963, 968 (2d Cir. 1984).  The jurisdictional bar of the Eleventh Amendment applies regardless of whether the relief sought from the state law claim is injunctive or one for damages. <u>Pennhurst</u>, 465 U.S. at 100, 102.  The plaintiff's claims under CFEPA in Counts Six and Seven must therefore be dismissed.

## F.    THE PLAINTIFF HAS FAILED TO STATE A CAUSE OF ACTION IN COUNT SIX UNDER CONN. GEN. STAT. § 46a-58.

Conn. Gen. Stat. § 46a-58(a)[3] does not provide for a private cause of action. <u>Garcia v. Saint Marty's Hosp.</u>, 46 F. Supp. 140, 142 (D. Conn. 1999), citing <u>Town of West Hartford v. Operation Rescue</u>, 726 F. Supp. 371, 380 (D. Conn. 1989), *vacated on other grounds*, 915 F.2d 92 (2d Cir. 1990).  A person aggrieved by a violation of § 46a-

---

[3]     Sec. 46a-58(a) provides:

(a)     It shall be a discriminatory practice in violation of this section for any person to subject, or cause to be subjected, any other person to the deprivation of any rights, privileges or immunities, secured or protected by the constitution or laws of this

58(a) may pursue the administrative procedure afforded by the Connecticut Commission on Human Rights & Opportunities (CCHRO), with judicial review. "The administrative procedure, with appellate review, is the sole remedy for such a violation." Operation Rescue, Id.

Defendants respectfully request that this cause of action be dismissed on the above grounds. In addition, the state defendant, DOC, asserts that it is shielded from suit under § 46a58(a) pursuant to both common law and Eleventh Amendment sovereign immunity. See, Argument IV B, supra, which is incorporated herein.

### G. THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR DEFAMATION AS TO INDIVIDUAL DEFENDANTS.

Plaintiff alleges "In communicating the false and defamatory statements, defendants intended to convey that Plaintiff was a danger to herself and the community and the person or persons to whom the defamatory matter was communicated understood the words to have such a meaning as evidenced by the Plaintiff's arrest." (Complaint ¶ 191). In short, there are no facts alleged in the complaint as to what statements were made by any and/or all defendants or what statements they are alleged to have said that are defamatory.

Similarly, the plaintiff states: "The defendant State of Connecticut Department of Corrections willfully ignored the only evidence from an independent source, which stated unambiguously that Plaintiff never made the statements alleged by Defendant Gonzales, for which plaintiff was suspended. The said defamatory statements of DOC employees

---

state or of the United States, on account of religion, nation origin, alienage, color, race, sex, blindness or physical disability

and/or agents, as aforesaid did and were calculated to cause great injury to the Plaintiff."

(Complaint ¶ 192).  Again, in short, the State of Connecticut has not waived its sovereign

immunity for this claim (see discussions above), there is no "Defendant Gonzalez" and

there are no "statements" either detailed or pled that could support a claim for defamation

as to any or all of the individual defendants.  Plaintiff's cause of action in Count Eight for

"Defamation" should be dismissed.

### H.    THE COURT HAS NO PERSONAL JURISDICTION OVER THE INDIVIDUAL DEFENDANTS.

Failure to serve the complaint upon a defendant deprives the court of personal

jurisdiction.  Rule 4 of the F.R.C.P. deals with service of original process, which is the

means by which the court secures jurisdiction over the defendant's person.  Without

jurisdiction over the person, the court cannot render a valid judgment against him.  Such

a judgment, absent personal jurisdiction, violates due process.  See, generally,  Shaffer v.

Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977);  McDonald v. Mabee, 243

U.S. 90, 37 S.Ct. 343, 61 L.Ed. 608 (1917);  Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565

(1878).

> Before a federal court may exercise personal jurisdiction over a defendant,
> the procedural requirement of service of summons must be satisfied.
> "[S]ervice of summons is the procedure by which a court having venue
> and jurisdiction of the subject matter of the suit asserts jurisdiction over
> the person of the party served." Mississippi Publishing Corp. v.
> Murphree, 326 U.S. 438, 444-45, 66 S. CT. 242, 245-46, 90 L.Ed. 185
> (1946).  Thus, before a court may exercise personal jurisdiction over a
> defendant, there must be more than notice to the defendant and a
> constitutionally sufficient relationship between the defendant and the
> forum.  There also must be a basis for the defendant's amenability to
> service of summons.  Absent consent, this means there must be
> authorization for service of summons on the defendant.

Omni Capitol Int'l v. Rudolph Wolff & Co.,  484 U.S. 97, 103, 108 S.Ct. 404,

409, 98 L.Ed.2d 415 (1987).

The original complaints were filed in this consolidated case on March 5, 2003 and

December 22, 2003 respectively.  John Armstrong's name first appeared as a defendant

in an amended complaint filed December 22, 2003.  The Amended Complaint, that is the

subject of this Motion, was filed on December 14, 2004 and for the first time, Eric Sousa

and Theresa Lantz appeared as named defendants.

To date, the Court record shows no return of service for any of the individual

defendants, to wit:  John Armstrong, Theresa Lantz, or Eric Sousa.

The failure to serve these defendants with the summons within 120 days of filing

the complaint requires dismissal of this action against these defendants in their individual

capacity.  See Rule 4, F.R.C.P., supra; Carmona Pacheco v. Betancourt Y. Lebron, 820 F.

Supp. 45 (D. Puerto Rico 1993).  The defendants request that this matter be dismissed

with prejudice, against them.  If the Court disagrees, the following legal arguments are

present as to Individual Defendants.

**I.    THE STATUTE OF LIMITATIONS BARS CERTAIN CLAIMS
       AGAINST THE INDIVIDUAL DEFENDANTS.**

It is established law that the Statute of Limitations for bringing a 42 U.S.C. §

1983 action is governed by the applicable law which, in Connecticut, is three years.  See,

Lounsbury v. Jeffries, 25 F.3d 131 (2d Cir. 1994).  As to each of the individually named

defendants, the plaintiff is limited as to many of the allegations in her complaint prior to

service.  As of this date, there has been no service upon any of the individual defendants

in their individual capacities.  It is submitted that as to plaintiff's § 1983 claims against

them, the Court may only look back at conduct three (3) years prior to the date that they were served. To the extent that they have not yet been served, and to the extent that they were not served within 120 days of the filing of the complaint, the defendants request that they be dismissed with prejudice from this lawsuit and/or that all of plaintiff's allegations against the individual defendants  prior to the date of service be dismissed.

### J.    FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.

With regard to the original complaint CV-03-00386, the plaintiff filed a complaint with the Commission on Human Rights and Opportunities (CHRO) on March 5, 2002, (Exh. 11) which CHRO complaint was amended on March 21, 2002. The three hundredth day preceeding March 5, 2002 is May 22, 2001.

In order "'[t]o sustain a claim for unlawful discrimination under Title VII . . .  a plaintiff must file administrative charges with the EEOC within 300 days of the alleged discriminatory acts.'"  Coudert v. Janney Montgomery Scott, LLC, No. 3:03CV324(MRC) (D. Conn. June 30, 2005) , quoting, Flaherty v. Metromail Corp., 235 F.3d 133, 136 n.1 (2d Cir. 2000); *see also* 42 U.S.C. § 2000e-5(e)(1) (establishing 300-day time bar for Title VII claims).  (Copy of Coudert attached).

It is submitted that for Title VII purposes, all incidents for which plaintiff maintains that the DOC is responsible prior to May 22, 2001 are respectfully time-barred and she may not assert them in her federal lawsuit having failed to exhaust those incidents in the CHRO complaint.

With regard to the second complaint filed by plaintiff 3:03CV2222, a CHRO complaint was filed on March 12, 2003 (CHRO 0310390, EEOC 16AA300920). The CHRO complaint, see Exh. 17, dealt with the issue of being placed on administrative leave pending an investigation. As discussed above with regard to plaintiff's first complaint, all incidents predating plaintiff's March 12, 2003 complaint by more than 300 days are time-barred to the extent that they were not exhausted at the CHRO. The CHRO dismissed plaintiff's complaint pursuant to its Merit Assessment Review on August 26, 2003 and determined that

> ☒ There is <u>NO REASONABLE</u> possibility that investigating the complaint would result in a finding of reasonable cause, and the complaint should be dismissed because:
> That is, a review of the case file, respondent's response, complainant's response to respondent's answer and the supporting documentation is not likely to reveal that respondent retaliated against complainant because of her protected conduct in the form of placing her on Administrative Leave, in violation of Connecticut general Statutes 46a-60(a)(4) and 46a-58(a).
>
> More specifically, the reviewer has examined the complaint, respondent's response, complainant's response to complainant's answer along with the supporting documentation, and as such, the information in the case file is unlikely to show that complainant's allegation will be supported by an investigation. Further investigation is similarly unlikely to show that respondent retaliated against complainant due to her prior protected conduct. In fact, further investigation will likely reveal respondent's action was atypical for the situation insofar as complainant's Administrative Leave with pay was a result of a pending investigation pertaining to a January 17, 2003 incident regarding allegations made against complainant with respect to threats/workplace violence. As such, further investigation is therefore unlikely to support complainant's claim that her protected conduct played a role in respondent's action.

(Exh. 18).

It is well established that the federal court has jurisdiction under Title VII only over claims made in the CHRO/EEOC charge or claims which are reasonably related thereto. Smith v. American President Lines, Ltd., 571 F.2d 102, 107 (2d Cir. 1978). In the present case, the second CHRO complaint was filed on March 12, 2003 with CHRO. (Exh. 17). It cannot be disputed that the CHRO complaint (0310390) and corresponding EEOC 16aa300920 was never amended to reflect plaintiff's termination or anything else that allegedly took place after March 12, 2003.

Plaintiff was terminated on November 6, 2003, long after the CHRO dismissed plaintiff's action. (Exh. 18, Exh. 22). Her termination, standing alone, is time-barred.

In anticipation of a legal argument under the "continuing violation" doctrine, the defendants rely upon Judge Kravitz's recent decision in Coudert v. Janney Montgomery Scott, LLC, 3:03CV324 (MRK)(D. Conn. June 30, 2005).

In that case, the court stated:

In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court considered the continuing violation doctrine and observed that Title VII "explains in great detail the sorts of actions that qualify as [u]nlawful employment practices' and includes among such practices numerous discrete acts." *Morgan*, 536 U.S. at 111 (quoting 42 U.S.C. § 2000e-2). In analyzing the statutory language of Title VII, the Supreme Court unanimously held that "[t]here is simply no indication that the term 'practice' [in 42 U.S.C. § 2000e-2(a)] converts *related discrete acts* into a single unlawful practice for the purposes of timely filing." *Morgan*, 536 U.S. at 111 (emphasis

added).  Rather, "[e]ach discrete discriminatory act starts a new clock for filing charges

alleging that act."  *Id*. at 113.  Moreover, *Morgan*  clearly stated,

> "Mere continuity of employment, without more, is insufficient to prolong
> the life of a cause of action for employment discrimination."  In order for
> the time period to commence with the discharge, "[a plaintiff] should have
> identified the alleged discriminatory acts that continued until, or occurred
> at the time of, the actual termination of his employment."  [A plaintiff]
> could not use a termination that fell within the limitations period to pull in
> the time-barred discriminatory act.   Nor could a time-barred act justify
> filing a charge concerning a termination that was not independently
> discriminatory.
>
> *Morgan*, 536 U.S. at 112-13 (quoting *Delaware State Coll. v. Ricks*, 449
> U.S. 250, 257 (1980)). . . .   As recently explained by the Second Circuit in
> *Elmenayer v. ABF Freight System, Inc.,* 318 F.3d 130 (2d Cir. 2003), "an
> employer performs a separate employment practice each time it takes
> adverse action against an employee, even if the action is simply a periodic
> implementation of an adverse decision previously made."  *Id* at 134.

Id., at pp. 9-10 (copy attached).

Applying Coudert and related law to this case, the plaintiff was placed on

administrative leave in January, 2003.  (Complaint ¶ 162).  She was not allowed to

resume employment in the DOC workplace at any time between being placed on

administrative leave and her termination in November 2003.  Her termination was a

discreet act for which she should have filed a new CHRO complaint, especially since her

only "related" complaint had already been dismissed by the CHRO.  She failed to do that.

Plaintiff simply filed a new lawsuit 3:03CV2222 without having exhausted her

administrative remedies.

Additionally, plaintiff has pled that former DOC Commissioner John Armstrong

retired on or about February 5, 2003 (Complaint ¶ 11).  Similarly, Commissioner Theresa

Lantz became acting Commissioner on or about February 5, 2003 until her permanent

appointment on or about April 1, 2003.  (Complaint ¶ 12).  To the extent that plaintiff was placed on leave prior to Armstrong's resignation and was terminated after his resignation, there is no continuity or nexus between the Armstrong and/or the Lantz administrations that are alleged in the complaint such that a continuing violation theory would be viable.  <u>See</u>, <u>Coudert</u>, <u>supra</u> at pp. 13-16.  Therefore, plaintiff's allegations regarding her termination should be dismissed from this lawsuit.

**L.    THE PLAINTIFF CANNOT DEMONSTRATE THE PERSONAL INVOLVEMENT OF THE INDIVIDUAL DEFENDANTS IN CERTAIN OF HER ALLEGATIONS.**

In order to establish the individual liability of a defendant in his individual capacity under § 1983, the plaintiff is required to show the personal involvement of the defendant in the denial of equal protection.  <u>Gill v. Mooney</u>, 824 F.2d 192, 196 (2d Cir. 1987); <u>Estate of Walker v. City of Bridgeport</u>, 676 F. Supp. 442, 446 (1986); <u>Bapat v. Ct. Dept. of Health Services</u>, 815 F. Supp. 525 (D. Conn. 1992). The individually named defendants are John Armstrong, Theresa Lantz and Eric Sousa.

In order to establish personal involvement, the plaintiff is required to provide that the defendant (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering violation or allowed the custom or policy to continue after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation.  <u>Sealey v. Giltner</u>, 116 F. 3d 47, 51 (2d Cir. 1997), quoting <u>Williams v. Smith</u>, 781 F.2d 319, 323-24 (2d Cir. 1986).

There is absolutely no evidence in the complaint that the defendant Theresa Lantz had any personal involvement in any of the plaintiff's complaints prior to being named Acting Commissioner and Commissioner after February, 2003. Any and all of plaintiff's claims have absolutely no nexus with Commissioner Lantz. The defendant relies upon its argument above regarding plaintiff's failure to exhaust the issue of her termination. Therefore, the defendant Lantz asks that this Court dismiss all individual claims as to her.

For purposes of narrowing factual issues, there are no allegations in the complaint that Eric Sousa had an involvement in plaintiff's "second complaint" involving her being placed on administrative leave and termination. T herefore, all such claims should be barred.

Lastly, former Commissioner Armstrong resigned from DOC in February, 2003. (Complaint, ¶ 11). All claims as to him subsequent to that date should, similarly, be barred.

## V.    __CONCLUSION__

For all of the reasons stated above, the defendants move that the Court grant their motion for summary judgment and dismiss the applicable claims from plaintiff's complaint.

DEFENDANT,
STATE OF CONNECTICUT,
DEPARTMENT OF CORRECTION

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY:    _____
Jane B. Emons
Assistant Attorney General
Federal Bar No. 16515
55 Elm Street - P.O. Box 120
Hartford, CT  06141-0120
Tel: (860) 808-5340
Fax: (860) 808-5383
Email:  jane.emons@po.state.ct.us

## CERTIFICATION

I hereby certify that a copy of the foregoing Defendants' Memorandum in Support

of Its Motion For Summary Judgment As To Plaintiff's Amended Complaint dated

December 14, 2004, was mailed this 10th day of November, 2005, first class postage

prepaid to:

Cynthia Jennings, Esq.
The Barrister Law Group
211 State Street, 2nd Floor
Bridgeport, CT  06604

_____
Jane B. Emons
Assistant Attorney General