UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EUNICE SMITH, | : | CIVIL ACTION NO. 3:03CV00386(AWT) |
|    *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, | : | |
| DEPARTMENT OF | : | |
| CORRECTION, ET AL. | : | |
|    *Defendants* | : | NOVEMBER 10, 2005 |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Pursuant to Local Rule 56(a)(1), the following material facts are not in dispute for the purpose of ruling on the present Motion for Summary Judgment.

1. The plaintiff, Eunice Smith, began working for the Department of Correction (DOC) as a Correction Officer on July 13, 1990. (Exh. 1).

2. John Armstrong was employed by the DOC as the Commissioner of Correction from 1995 until his retirement on or about February 2003. (Complaint ¶ 11).

3. Theresa Lantz was appointed to the position of Commissioner of Correction on or about April 2003 and remains so employed as of this date. (Complaint ¶ 12).

4. Erik Sousa was at all times relevant to plaintiff's complaint, a DOC Lieutenant. (Complaint ¶ 13).

5. In October 1995, plaintiff was terminated from her position at DOC. (Complaint ¶ 19).

6. Plaintiff was dismissed by letter of October 10, 1995 "based on your misconduct for threatening another employee with a handgun." (Exh. 2).

7. Plaintiff brought a discrimination complaint on account of her termination. (Exh. 3).

8. CHRO 9610237 (EEOC No. 960177) was settled pursuant to a Stipulated Agreement on January 9, 1997. (Exh. 4).

9. As part of that Stipulated Agreement DOC did not admit liability, plaintiff was reinstated with backpay and plaintiff's termination was converted to a 30 working day suspension without pay. (Exh 4).

10. Plaintiff signed the Stipulated Agreement voluntarily. (Exh. 4).

11. Upon her return to work on or about January 31, 1997, plaintiff was informed about an attached December 20, 1996 letter from Commissioner Armstrong that was distributed to all employees. (Exh. 5).

12. Commissioner Armstrong's letter concerning the "inappropriate use of fire arms both on and off duty" stated, *inter alia*, that

> "all employees are hereby placed on notice that <u>any incident</u> which involves the display of a firearm by an employee under any circumstances where such display is unauthorized, or without the express knowledge and consent of all person involved, will be considered to be an act of misconduct which may result in disciplinary action at the level of dismissal from State Service." Exh. 6).

13. In accordance with Commissioner Armstrong's Letter and in accordance with the DOC Personal Weapons Storage Policy, plaintiff applied to store her personal weapon at DOC on October 28, 1997, which application was approved on November 3, 1997. (Exh. 7).

2

14. On July 25, 1997, plaintiff filed a new CHRO Complaint No. 9710718 alleging discrimination and retaliation. Her complaint was amended on July 9, 1998, July 28, 1998 and August 25, 1999.  (Complaint ¶ 28) (Exh. 8).

15. On August 6, 1999, Commissioner John Armstrong issued a memorandum to all Complex Wardens, Wardens and Unit Heads regarding Work Place Violence and Storage of Weapons.  The memo mandated that the policy be read at roll call on all shifts for seven (7) days.  (Exh. 9).

16. On May 5, 2000, plaintiff and DOC entered into a Stipulated Agreement regarding CHRO NO. 9710718, which matter was dismissed by the CHRO pursuant to Settlement Agreement (Exh. 10).

17. Plaintiff entered into this Stipulated Agreement knowingly and voluntarily.  (Exh 10, ¶ 9).

18. In the Stipulated Agreement regarding CHRO 9710718, DOC did not admit liability, plaintiff received $2,150.00, and various "adjustments" were made regarding plaintiff's "discipline."  (Exh. 10).

19. One of the stipulations regarding CHRO 9710718 was that "the five-day suspension served by the Complainant . . . shall remain on the record but shall not be used for progressive discipline purposes or promotion purposes after October 25, 2000, provided that no incidents of a similar nature take place between March 21, 2000 and October 25, 2000."  (Exh. 10, ¶ 11).

20. After October 25, 2000, Plaintiff began to complain about a myriad of events at DOC and amassed a number counsellings and/or disciplines which became the subject matter of a new CHRO Complaint 0210362 (EEOC 16aa200805) filed on March 5, 2002. (Exh. 11).

21. CHRO 0210362 was the administrative action taken prior to filing plaintiff's complaint 3:03CV00386(AWT) on March 5, 2003. (Exh 12, Docket Report #1).

22. Plaintiff received a "Release of Jurisdiction" from the CHRO December 10, 2002 as to CHRO 0210362 (EEOC 16AA200805) (Exh. 13).

23. On January 17, 2003, plaintiff was involved in an incident at DOC for which she was ultimately arrested for Inciting Injury to Persons, Breach of Peace, Threatening, Possession of Marijuana and Possession of Drug Paraphernalia. (Exh. 14).

24. Pursuant to this lawful arrest on site at DOC, the State Police recovered a loaded hand gun, ammunition and a holster. Plaintiff stated to the State Police that keeping the weapon in her vehicle was against DOC policy. (Exh. 8, Exh. 14).

25. On January 17, 2003, plaintiff was placed by DOC on Administrative Leave with pay, pending investigation. (Exh. 15).

26. Plaintiff failed to provide the DOC with details of her January 17, 2003 arrest in violation of DOC Administrative Directive 2.17#5(A-8). (Exh. 16).

27. On March 12, 2003, Plaintiff filed a CHRO Complaint 0310390 (EEOC No. 16AA300920) alleging, *inter alia*, that by being placed on administrative leave, she was retaliated against by DOC for having filed prior complaints of discrimination. (Exh. 17).

28. On August 27, 2003, the CHRO, pursuant to Merit Assessment Review, determined that there was no reasonable possibility that further investigation would result in a finding of reasonable cause and dismissed CHRO complaint 0310390.  (Exh. 18).

29. On September 24, 2003, the CHRO issued a release of Jurisdiction for CHRO No. 0310390 (EEOC 16aa2003-00920) (Exh. 19).

30. A "Dismissal and Notice of Rights" was issued on June 16, 2004, as to EEOC 16aa2003-00920 with the reason "the EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge."  (Exh. 20).

31. The U.S. Department of Justice issued a Notice of Right to Sue as to EEOC 16aa2003920 on March 26, 2004.  (Exh. 21).

32. On October 23, 2003, the plaintiff was dismissed from State Service on account of her on and off duty behavior stemming from her January 17, 2003 arrests. (Exh. 22).

33. At no time after her dismissal from DOC, did plaintiff amend her CHRO complaint 10310390 or her EEOC complaint 16AA300920 to reflect her dismissal.

34. CHRO 0310390 and EEOC 16AA300920 were the administrative actions taken prior to filing plaintiff's complaint 3:03CV2222 filed on December 22, 2003. (See Complaint 3:03CV2222).

35. On March 22, 2004, 3:03CV00386 and 3:03CV2222 were consolidated by the Court.  (Exh. 12, Docket #31).

5

36. On October 17, 2005, an independent arbitrator, after a full hearing on the merits, denied plaintiff's grievance and held that plaintiff was terminated by DOC on October 23, 2003 for "just cause." (Exh. 23).

>DEFENDANT,
>STATE OF CONNECTICUT,
>DEPARTMENT OF CORRECTION
>
>RICHARD BLUMENTHAL
>ATTORNEY GENERAL
>
>BY: _____
>Jane B. Emons
>Assistant Attorney General
>Federal Bar No. ct16515
>55 Elm Street - P.O. Box 120
>Hartford, CT  06141-0120
>Tel: (860) 808-5340
>Fax: (860) 808-5383
>Email:  jane.emons@po.state.ct.us

## CERTIFICATION

I hereby certify that a copy of the foregoing Defendants' Statement of Material Facts Not In Dispute, was mailed this 10th day of November, 2005, first class postage prepaid to:

Cynthia Jennings, Esq.
The Barrister Law Group
211 State Street, 2nd Floor
Bridgeport, CT  06604

>_____
>Jane B. Emons
>Assistant Attorney General