UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EUNICE SMITH, | : | CIVIL ACTION |
| *Plaintiff* | : | No. 3:03CV00386 (AWT) |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, | : | |
| DEPARTMENT OF CORRECTION, ET AL: | | February 21, 2006 |
| *Defendants* | : | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Eunice Smith, the Plaintiff in this matter is an African-American woman who was employed for approximately thirteen (13) years as a correctional officer for the State of Connecticut Department of Correction (hereafter referred to as "DOC"). Very quickly after becoming a correctional officer, and while assigned to the Hartford Correctional Center, Plaintiff became aware of a pattern and practice of discrimination against racial minorities within the DOC. As a result she decided to become an advocate against such discrimination by becoming a union shop steward for AFSCME, Council 4 (Local 1565). By her vigorous advocacy against discrimination, both as a union shop steward and in public forums, Plaintiff became anathema to the DOC. This lawsuit is the result of an ongoing reign of harassing and discriminatory conduct

by the DOC against Plaintiff resulting in her termination in November 2003. Defendants now file this Motion for Summary Judgment seeking to excise certain portions of the complaint from further consideration by the court.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). It is the burden of the moving party to show that no genuine factual dispute exists. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The standard of review for a summary judgment motion requires that the court resolve all ambiguities and draw all reasonable inferences in the favor of the non-moving party. See Giannullo v. City of N.Y., 322 F.3d 139, 140 (2d Cir. 2003). "Moreover, in determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." Id.

Moreover, "...the non-moving party must offer such proof as would allow a reasonable juror to return a verdict in his favor, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986), and only when that proof is slight is summary judgment appropriate, see Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988). The trial court's function at this stage is to *identify issues* to be tried, *not decide* them. Summary judgment is *sparingly used* where intent and state of mind are at issue, see Montana v. First Fed. Savings. & Loan Association, 869 F.2d 100, 103 (2d Cir. 1989) (Emphasis Added), because, as we have emphasized, careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination".

### III. ARGUMENT

#### A. Plaintiff has a viable claim of Retaliation under Section 1983 against the Individuals

To survive summary judgment on a Section 1983 First Amendment retaliation claim a plaintiff must demonstrate that she engaged in protected speech, and that the speech was a substantial or motivating factor in an adverse decision taken by the defendant. See Hynes v. Squillace, 143 F.3d 653, 658 (2d Cir. 1998). It is undisputed that Brook Chambery's complaints, protests, and lawsuits are protected speech. Cf. Franco v. Kelly, 854 F.2d 584, 588-89 (2d Cir. 1988) (describing "right to petition government for redress of grievances" as "guaranteed by the First and Fourteenth Amendments"). See also Beechwood Restorative Care Center v. Leeds, 04-3248-CV (2nd Cir. 2006)

The complaint in this matter is replete with allegations that Plaintiff engaged in numerous acts of public speech concerning matters of public concern. Paragraphs with factual claims that support a free speech claim include, but are not limited to, paragraph 15 (alleging that Plaintiff frequently advocated vigorously for the rights of employees, advocate specifically against discrimination); paragraphs 88, 92, 114, and 123 ( alleging that Plaintiff attended at a Sexual Harassment Hearing at the Legislative Building, where she testified about and spoke out and opposed all forms of sexual harassment with the department); paragraph 136 (alleging that Plaintiff spoke with Senator Edith Prague regarding blatant racism and racial retaliation in the workplace); paragraph 89 (alleging Plaintiff's participation in a CHRO public hearing on whether or not to investigate the DOC sexual harassment complaint filed by AFSCME ); paragraphs 18 and 26 (alleging Plaintiff's insistence that DOC follow their own rules, policies and contract); paragraphs 33, 66, 83, 91 and 95(alleging that Plaintiff spoke out regarding issues of discrimination and harassment at the Labor and management Meeting); paragraphs 42,45 and 48 (alleging that Plaintiff wrote to International President of AFSCME relative to racism in union policies, procedures and practices);  and paragraph 61 (alleging that Plaintiff wrote a letter to Armstrong regarding hostile work environment).

These factual allegations of public speech by Plaintiff all relate to "…matters of political, social, or other concern to the community" Morris, supra at 110. Her advocacy, as alleged in the

4

complaint, concerned matters that had a broad public purpose much larger than her own grievances with the DOC.  See also New York Law officers and cases cited therein.

Plaintiff has plead sufficient facts to support a claim under Section 1983 for violation of rights guaranteed to her by the First Amendment of the United States Constitution.  In <u>New York State Law Officers Union v. Andreucci</u>, (2d Cir. 2006), a correctional officer on leave as an officer of AFSCME, District Council 82, alleged under Section 1983 that he was retaliated against because of his constitutionally protected speech.  In particular, he spoke out against the undersheriff's discipline of correctional officers and transference in violation of seniority rights.  The employer then revoked his leave and required that he return to work in his position as a correctional officer.   The court noted that a public employee states a legally cognizable claim under Section 1983 for first amendment retaliation if they engage in constitutionally protected speech, suffers an adverse employment action and there is a causal relationship between utterance of the speech and the subsequent adverse action.  <u>Washington v. County of Rockland</u>, 373 F.3d 310, 320 (2d Cir. 2004); <u>Morris v. Lindau</u>, 196 F.3d 102, 110 (2d Cir. 1999).   "We conclude that the question of whether the revocation of [Hoyt's] full-time leave amounted to an adverse employment action should have been reserved for the jury, and the district court erred in holding otherwise and entering summary judgment on that basis."  <u>New York State Law Officers</u>, supra .

The factual allegations pled by Plaintiff create an issue of fact regarding whether DOC retaliated against her because of her outspokenness on matters or public concern and a pattern of racial discrimination against all employees of DOC.

Therefore, Plaintiff's Section 1983 claim permits a retaliation cause of action under the First Amendment. While the complaint did not specifically set forth the First amendment to the U.S. Constitution as a basis for Plaintiff's claims, such is not required under the liberal pleading rules of F.R.C.P. 8.

In <u>Wynder v. McMahon</u>, 360 F.3d 73 (2nd Cir. 2004), the Second Circuit affirmed the rule of <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957) that Rule 8(a)(2) of the F.R.C.P. provides (a) that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief," and (b) that such a statement simply "`give the defendant ***fair notice*** of what the plaintiff's claim is and the grounds upon which it rests.'" 534 U.S. at 512  See also <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002).

In Wynder, the Second Circuit found that the district court "demanded far more than a short and plain statement of the claims and the grounds upon which they rest", when it required Plaintiff  to provide, *inter alia,* (1) "***legal theories***]," (2) specific "***authority, statutory*** and case law," (3),"evidence . . . in detail," and (4) separate claims as to each defendant.."

Moreover, "Rule 8's "liberal pleading principles" do not permit dismissal for "`*failure in a complaint to cite a statute, or to cite the correct one. . . .* *.* Factual allegations alone are what matters.'" *Id.* (quoting <u>Albert v. Carovano</u>, 851 F.2d 561, 571 n. 3 (2d Cir. 1988)". <u>Wynder</u>, supra at p.77.  "More extensive pleading of fact[s] is not required" under Rule 8 because the Federal Rules "provide other devices besides pleadings that will serve to define the facts and issues." <u>Scutti Enters., LLC. v. Park Place Entertainment Corp.</u>, 322 F.3d 211, 215 (2d Cir. 2003).

Plaintiff's factual allegations in the instant case are sufficient to provide Defendants fair notice of her claims under Section 1983.  As in <u>Wynder</u> and cases cited therein, the defendants in the instant case have not "… not even remotely suggested" in their motion papers that the amended complaint "did not give them notice of the substance of [plaintiff's] claims, or that they were otherwise unintelligible."

Even should the court deem the first amendment claim to not be properly or sufficiently pled, an opportunity to amend should be permitted inasmuch as the claim arises from the same nucleus of operative facts, there is no prejudice to Defendant because no discovery has been done in this case. <u>Hanlin v.Mitchelson</u>, 794 F.2d 834, 841 (2d Cir. 1986)( "Here, the new claims are merely variations on the original theme of malpractice, arising from the same set of operative facts as the original complaint)".  Therefore Plaintiff's claims under Section 1983 must be submitted to the jury.

### B. Plaintiff has a Viable Claim of Conspiracy under 1985 against the Individuals

To state a claim under section 1985, a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999).

Paragraph 21 of the Amended Complaint of December 14, 2004 alleges that "[I]ndividuals employed by the Defendant Department of Corrections, *and* members of AFSCME Council 4 *and* members and administration of Local 1565 including, but not necessarily limited to the named defendants, willfully conspired to deprive plaintiff of her civil rights under state and federal law. Their conspiratorial actions and violations of plaintiff's civil rights under state and federal law, ultimately led up to the suspension and termination of plaintiff."

Thus, because Plaintiff has pled facts supporting that the DOC and two separate entities, Council 4, and Local 1565, participated in the conspiracy, the intracorporate conspiracy doctrine does not come into play. The alleged acts of conspiracy involved more than "a *single act* by a single corporation acting exclusively through its own directors, officers, and employees,

each acting within the scope of his employment. Cf. Girard v. 94th and Fifth Avenue Corporation, 530 F.2d 66 (2d Cir. 1976).

Moreover, Plaintiff has pled facts establishing that the basis for the conspiracy was racial animus. "[o]one of the most important objectives of the federal rules is that lawsuits should be determined on their merits and according to the dictates of justice, rather than in terms of whether or not the averments in the paper pleadings have been artfully or inartfully drawn." Coudert v. Janney Montgomery Scott, LLC, citing Charles Alan Wright, et. al. Federal Practice & Procedure: Civil 3d § 1286, at 747 (3d ed. 2004). It should be noted that Defendants cite no evidence in support of its claim. Nor can Defendant show any prejudice or lack of notice. It is merely the sufficiency of the pleadings that are questioned. Under the liberal pleading standards of F.R.C.P. 8, and the "fair notice" principle of Conley v. Gibson, should the court deem the pleadings to be insufficient, Plaintiff should be permitted a reasonable time to re-plead.

**C. Plaintiff has Exhausted her Administrative Remedies by the Filing of Charge No. 0310390.**

On March 12, 2003 Plaintiff filed a Complaint of Discrimination with Connecticut Commission on Human Rights & Opportunities. This complaint alleged retaliation against Plaintiff based upon her participation in a civil rights issue on or about January 17, 2003, because

9

of her having previously opposed discriminatory conduct, by placing her on administrative leave on January 17, 2003. Specific statutes alleged to have been violated were Title VII, Connecticut General Statutes 46 a-58(a), and 46 a-60(a)(4). (See Exhibit 1). In her affidavit supporting the charge of retaliation, Plaintiff alleged specific facts surrounding her placement on administrative leave. Namely, she alleged that Officer Patricia Ackers-Gonzalez had complained that Plaintiff "physically threatened to shoot her", that Plaintiff was arrested by the Connecticut State Police and accused of inciting injury to persons or property. Plaintiff further alleged various other correctional officers who had engaged in the same or similar conduct and not been disciplined. (See Exhibit 2). These underlying facts provided the basis for DOC's later termination of Plaintiff in November 2003.

      The Second Circuit has held that "[w]here there exists a requirement that a Title VII claim first be presented to the federal EEOC, we have recognized three situations in which claims not raised in an EEO charge are "sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action": 1) where "the conduct complained of would fall within the `scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination'"; 2) where the complaint is "one alleging retaliation by an employer against an employee for filing an EEOC charge"; and 3) where the complaint "alleges further incidents of discrimination carried out in precisely the same

manner alleged in the EEOC charge." <u>Butts v. City of New York Dep't of Hous. Pres. & Dev.</u> 990 F.2d 1397, 1402-03 (2d Cir. 1993) (superceded on other grounds).

In the instant case, the underlying conduct (i.e. the threat to shoot her co-worker) is the very conduct complained of in the CHRO investigation, that formed the basis for Plaintiff's later discharge. But for this alleged conduct, and Plaintiff's arrest, DOC would have had no reason for terminating her or for its claim that she failed to apprise them of the status of her case under Administrative Directive 2.17. The underlying alleged conduct is what was investigated by CHRO. CHRO then determined that there was no basis for a cause finding and dismissed the matter.[1]

In determining whether claims are reasonably related, the focus should be "on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." <u>Freeman v. Oakland Unified School District</u>, 291 F.3d 632, 637 (9th Cir. 2002); see also <u>Alonzo v. Chase Manhattan Bank, N.A.</u>, 25 F. Supp. 455, 458 (S.D.N.Y. 1998) ("[I]t is the substance of the charge and not its label that controls."). Thus, under the first principle of Butts, Plaintiff has alleged facts that warrant a finding of "reasonable relatedness". See also <u>Shah v. New York State Dep't of Civil Serv.</u>,168 F.3d 610, 614 (2d Cir. 1999) where the court states that "claims that were not asserted before the EEOC may be

---

[1] This dismissal was later affirmed by EEOC in its issuance of a right to sue letter.

pursued in a subsequent federal court action if they are `reasonably related' to those that were filed with the agency."

Plaintiff also meets the "reasonably related" test because her charge alleged retaliation for having filed previous CHRO/EEOC charges.

Finally, the third Butts type of reasonably related claim is where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge. See Almendral, 743 F.2d at 967 (discrimination through manipulating civil service rules was reasonably related to EEOC charge alleging manipulation of rules since it alleged "essentially the same" acts). Such an incident might not fall within the scope of the EEOC investigation arising from the charge, since it might occur after the investigation was completed.

The court noted "the values associated with exhaustion are not entirely lost because the EEOC would have had the opportunity to investigate, if not the particular discriminatory incident, the method of discrimination manifested in prior charged incidents. *The fact that a charge alleging the same method was not resolved by the EEOC to the plaintiff's satisfaction makes it more likely that a new charge alleging the later incident would meet the same fate*. Our holding that such conduct is "reasonably related" implicitly recognizes the cost to a plaintiff of requiring exhaustion in *circumstances where the likelihood of a successful settlement is limited*." Butts, supra (Emphasis Added).

In other words, the Second Circuit has opined that it would be a futile act in some instances to require further investigation in circumstances where the new or amended charge would likely be dismissed. Such would be the case had Plaintiff filed an amended charge. CHRO had already determined that there was no retaliation involved in the decision to place Plaintiff on administrative leave for essentially the same facts that led to her termination. It was unlikely that further investigation by CHRO would have reached a different result. Successful settlement at the administrative level was limited, particularly given the long and complex history of the Plaintiff's claims and the litigation that had already been commenced. Moreover, Defendant had already notified Plaintiff that she was facing discipline up to and including dismissal from state service as early as February 10, 2003. (See Exhibit 16 of Defendant's Motion). The termination letter gave the reason for the termination as the January 17 and 18, 2003 on and off duty conduct (See Exhibit 22 of Defendant's Motion). Under these circumstances, Plaintiff's claims regarding her termination were reasonably related under the Butts tests to the charge regarding her placement on administrative leave. Therefore, she has exhausted her administrative remedies and this complaint allegation must be retained.

Moreover, in Terry v. Ashcroft, 336 F.3d 128 (2d Cir. 2003), most of the incident that the employee [Terry] cited as providing the basis for his constructive discharge claim, had previously alleged were done to retaliate against him for his EEO complaints. The court held

that "requiring a separate EEO filing could have the perverse result of promoting employer retaliation in order to impose further costs on plaintiffs and delay the filing of civil actions relating to the underlying acts of discrimination." Butts, 990 F.2d at 1402.

This rationale is equally true in the instant case, where to require a separate administrative filing over facts previously investigated and dismissed would have only served to delay the already pending litigation.

Defendant seeks to have this court excise various complaint allegations that fall outside the 300-day time period prior to the filing of the CRHO charges. However, these claims are permissible on two bases. One, they are "background evidence" in support of the timely claims. See Petrosino v. Bell Atlantic, 385 F.3d 210, 220 (2d Cir. 2004) (noting that termination claims under Title VII are discrete claims, but that evidence of previous promotion denials outside the limitations period may be relevant background evidence).

Secondly, the "continuing violation exception" to that limitation provides that if a plaintiff "files a timely EEOC charge about a particular discriminatory act committed in furtherance of an ongoing policy of discrimination," the statute of limitations is extended "for all claims of discriminatory acts committed under that policy." Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997); see Harris v. City of New York, 186 F.3d 243, 248-50 (2d Cir. 1999). To invoke the doctrine, a plaintiff must show either (1) "specific ongoing discriminatory

policies or practices," or (2) "specific and related instances of discrimination [that] are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice."  Quinn v. Green Tree Credit Corp., 159 F.3d 759, 766 (2d Cir. 1998) (quoting Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994)); see also Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993).

       Plaintiff's complaint is replete with allegations of an ongoing policy of discrimination against racial minorities within the DOC.   These paragraphs include, but are not limited to paragraph 17 (allegations that Plaintiff believes that a pattern of discrimination against persons of African descent or the color of her skin or both exists in the Department of Corrections); paragraph 20 (alleging racially discriminatory manner in which African-Americans were treated at the State of Connecticut DOC); paragraph 27 (allegation that the October 1995 wrongful termination of Plaintiff is part of a pattern); paragraph 29 (alleging a grievance against management, to cease and desist their discriminatory practices); paragraph 37 (alleging request to Council 4 "requesting an investigation of racial discrimination and harassment at DOC"); paragraph 65 (alleging a Commissioner Armstrong "letter condoning his administrators' conduct toward Plaintiff"); paragraph 77 (alleging "continuous and ongoing, unprofessional conduct, harassment, retaliation, and discrimination his [Armstrong} agents subjected to that(sic) staff at the Hartford Correctional Center"); paragraphs 83 and 95 (alleging that plaintiff "constantly

informed the Department's agents of racial harassment, retaliation, discrimination, and disparate treatment in discipline, post assignments, overtime, and more (relative to African-American employees"). The facts alleged in these and other paragraphs of the complaint are "specific" or "identifiable" discriminatory customs or practices, or specific and ***related acts that are tantamount*** to such customs or policies.

    Defendant attempts to excise the practices and policies of former Commissioner Armstrong and Commissioner Lantz.  However, this court may take official notice of the fact that Lantz is a career employee of the DOC, who was acting Commissioner from February 2003 after the retirement of Armstrong until permanent appointment in April 2003.  Ms. Lantz began her tenure with the Connecticut Department of Correction in July of 1989 as the Director of Training and Staff Development. In subsequent assignments she also served as the Department's *Deputy Commissioner* for Administrative Services, and as Warden at three high security facilities.  When she became Commissioner, she would necessarily have been apprised of the complex history regarding Plaintiff's employment with DOC, and the issues she had been an advocate for over the years, as part of any decision to make a termination.  In her official capacity as Commissioner, Lantz was responsible for enforcing any then existent policies or practices of the DOC.  If she did not seek to remedy any practices that might ultimately be found

to be a discriminatory policy or practice, she then became responsible for their continuance to the same extent that Armstrong was.

      **C.  Insufficient Service of Process should not Result in Dismissal of the Individual Causes of Action.**

The Second Circuit Court has stated that in determining whether to dismiss a case for lack of sufficient service, the court must liberally construe Rule 4 to further the purpose of finding personal jurisdiction in cases in which *the party has received actual notice and will not be prejudiced by a continuance of the action*. (Emphasis Added) <u>Romandette v. Weetabix Co., Inc</u>., 807 F.2d 309, 311 (2d Cir. 1986).

Finally, in a recent decision in the District Court for the District of Connecticut, the court declined to enter a dismissal under circumstances where there was actual notice to defendants of the pendency of an action against them but where there was an imperfection in the service of process. See <u>Johnson v. Fleet</u>, Docket No. 3:04CV162 (JBA).  Instead the court extended the time for the plaintiff to complete proper service.  In refusing to dismiss the case, the court noted that Rule 4 (m) permits the extension of time for service of process *even in the absence of good cause*, citing *Federal Practice and Procedure*, Wright and Miller, Sec. 1137 (3rd Ed. 2002) (Emphasis Added).

In the instant case, Defendant has not pled that any prejudice will occur to the individually named defendants, nor their lack of knowledge of the claims. The court should permit a reasonable time to cure any procedural defects in this regard.

## IV.   CONCLUSION

For all of the foregoing reasons, it is respectfully submitted that the Defendant's Motion for Summary Judgment should be dismissed.

```
                              FOR THE PLAINTIFF
                              EUNICE SMITH


                              BY:_____/S/_____
                              CYNTHIA R. JENNINGS (ct 21797 )
                              THE BARRISTER LAW GROUP, LLC
                              211 State Street, Suite 200
                              Bridgeport, CT 06604
                              Tel: (203) 334-4800
                              Fax: (203) 333-7178
                              Email: Cynthia_Jennings_Law@yahoo.com
```

# CERTIFICATE OF SERVICE
Rev. 12/1/04

| | | |
|---|---|---|
| Plaintiff **[EUNICE SMITH]** | ) | Case No. **[3:03-cv-00386-AWT]** |
| | ) | |
| v. | ) | |
| | ) | |
| **State of Connecticut** | ) | February 21, 2006 |

I hereby certify that on **[February 21, 2006]**, a copy of foregoing **[Plaintiff's Response to Defendant's Motion for Summary Judgment]** was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

    **/S/Cynthia R. Jennings, Esq.,**
**CYNTHIA R. JENNINGS, ESQ.,**
THE BARRISTER LAW GROUP, LLC.,
211 STATE STREET, BRIDGEPORT
CONNECTICUT 06604
TEL:  203-334-4800
FAX: 203-368-6985
Email: Cynthia_Jennings_law@yahoo.com
Federal Bar No. CT21797