UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EUNICE SMITH, | : | CIVIL ACTION NO. 3:03CV00386(AWT) |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, | : | |
| DEPARTMENT OF | : | |
| CORRECTION, ET AL. | : | |
| *Defendants* | : | JUNE 19, 2007 |

## JOINT TRIAL MEMORANDUM

**1.    TRIAL COUNSEL:**

**Plaintiff:**

John R. Williams
John R. Williams and Associates, LLC
Federal Bar No. ct00215
51 Elm Street, Suite 309
New Haven, CT 06510
Tel: (203) 562-9931
Fax: (203) 776-9494
E-mail: jrw@johnrwilliams.com

**Defendants:**

Jane B. Emons
Assistant Attorney General
Federal Bar No. Ct16515
55 Elm Street - P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5340
Fax: (860) 808-5383
E-mail: jane.emons@po.state.ct.us

**2.    JURISDICTION:** The basis for the court's subject matter jurisdiction is Sections 1331, 1343(3), 1367(a) and 2201(a) of Title 28 and Sections 1981 and 2000e of Title 42 of the United States Code.

**3.    JURY/NON-JURY:** This case shall be tried with a jury.

**4.    NATURE OF THE CASE:** This is a Title VII action by the plaintiff against the Connecticut Department of Correction wherein she alleges that she suffered adverse employment actions, including termination of her employment, because of her

race and prior complaints of unlawful employment practices. She seeks compensatory damages and attorney fees.

### 5.    STIPULATIONS OF FACT AND LAW.

1.      The plaintiff, Eunice Smith, began working for the Department of Correction (DOC) as a Correction Officer on July 13, 1990.

2.      John Armstrong was employed by the DOC as the Commissioner of Correction from 1995 until his retirement on or about February 2003.

3.      Theresa Lantz was appointed to the position of Commissioner of Correction on or about April 2003 and remains so employed as of this date.

4.      Plaintiff brought a discrimination complaint on account of her termination.

5.      In October 1995, plaintiff was terminated from her position at DOC.

6.      CHRO 9610237 (EEOC No. 960177) was settled pursuant to a Stipulated Agreement on January 9, 1997.

7.      As part of that Stipulated Agreement DOC did not admit liability, plaintiff was reinstated with backpay and plaintiff's termination was converted to a 30 working day suspension without pay.

8.      On July 25, 1997, plaintiff filed a new CHRO Complaint No. 9710718 alleging discrimination and retaliation. Her complaint was amended on July 9, 1998, July 28, 1998 and August 25, 1999.

9.      On May 5, 2000, plaintiff and DOC entered into a Stipulated Agreement regarding CHRO NO. 9710718, which matter was dismissed by the CHRO pursuant to Settlement Agreement.

10.    In the Stipulated Agreement regarding CHRO 9710718, DOC did not admit liability, plaintiff received $2,150.00, and various "adjustments" were made regarding plaintiff's "discipline."

11.    Plaintiff received a "Release of Jurisdiction" from the CHRO December 10, 2002 as to CHRO 0210362 (EEOC 16AA200805).

12.    On January 17, 2003, plaintiff was involved in an incident at DOC for which she was ultimately arrested for Inciting Injury to Persons, Breach of Peace, Threatening, Possession of Marijuana and Possession of Drug Paraphernalia.

13.    On January 17, 2003, plaintiff was placed by DOC on Administrative Leave with pay, pending investigation.

14.    On March 12, 2003, Plaintiff filed a CHRO Complaint 0310390 (EEOC No. 16AA300920) alleging, *inter alia*, that by being placed on administrative leave, she was retaliated against by DOC for having filed prior complaints of discrimination.

15.    On September 24, 2003, the CHRO issued a release of Jurisdiction for CHRO No. 0310390 (EEOC 16aa2003-00920).

16.    The U.S. Department of Justice issued a Notice of Right to Sue as to EEOC 16aa2003920 on March 26, 2004.

6.    **PLAINTIFF'S CONTENTIONS:**    The plaintiff was a Correction Officer employed by the Connecticut Department of Correction for many years.  She repeatedly complained both internally and to outside agencies that, in her opinion, the department discriminated against its African-American employees and against her because of her race.  She contends that she was disciplined in a manner different from

3

that imposed upon Caucasian officers under similar circumstances because of her race and because of her prior complaints; and she contends that she was terminated from her employment under circumstances where other similarly situated officers were not terminated, both because of her race and because of her prior complaints of unlawful discriminatory employment practices within the Department of Correction.

7.    **DEFENDANT'S CONTENTIONS:** The defendant contends that the plaintiff will be unable to prove any aspect of her case. The plaintiff has been litigating against the DOC for 11 years. Each and every one of her allegations show a pattern that following discipline or criticism of plaintiff's "bad behavior", or failure to follow DOC rules, she claims to have suffered either harassment or discrimination.

DOC maintains that it can demonstrate that plaintiff did not suffer a hostile work environment and that she was not treated differently from or more harshly than others. Additionally, DOC maintains that it never "retaliated" against plaintiff. Notwithstanding her many claims or complaints of discrimination, DOC is confident that it has legitimate, nondiscriminatory reasons for its actions vis-a-vis plaintiff, including but not limited to her termination.

8.    **LEGAL ISSUES:**

The plaintiff claims no legal issues.

The defendant claims:

1.    Whether plaintiff suffered a hostile work environment based upon her race.

2.    Whether plaintiff was treated differently than others an account of her race.

3.    Whether DOC retaliated against plaintiff for opposition discrimination.

9.    **VOIR DIRE QUESTIONS.**

**Plaintiff:**

1.    This is a lawsuit for employment discrimination brought by a correction officer against the state Department of Correction. Is there any reason why you would have difficulty being completely neutral and fair in deciding this case if you are chosen to serve on the jury?

2.    Is there anyone here who would prefer not to sit on a jury concerning a case of this kind?

3.    Does anyone here feel for any reason that citizens who believe that they have been treated illegally and unfairly should not bring suit against those they believe to be responsible? If so, please explain.

4.    Have you or has anyone close to you ever been the victim of employment discrimination?

5.    Have you or anyone close to you ever lost a job for reasons you considered to be unfair?

6.    Has anyone here or anyone close to you ever been employed by any other Governmental unit in the State of Connecticut or elsewhere?

7.    Do you know or have you read anything or heard anything about this case, the plaintiff or any of the lawyers involved in the case?

8.    Has anyone here ever served as an appointed or elected official of state, city or local Government?

9.    Has anyone here or anyone close to you ever been involved in any political campaigns or elections?  If so, please provide details.

10.    Has anyone here or any close to you ever been employed by an attorney?

11.    Would you tend to favor one side or the other in this case without regard to the evidence which may be presented?

12.    Does anyone here believe that allegations of employment discrimination should be treated less seriously than other kinds of illegal activity?

13.    The plaintiff is an African-American.  Would anyone here be prejudiced against her because of that fact?

14.    Does anyone here believe that the laws which prohibit discrimination on the basis of race should be repealed or not enforced?

15.    Is there anyone here who would refuse to return a verdict in favor of the plaintiff even if she proved his case?

16.    Have you, or has anyone close to you, ever been a party to a lawsuit?  If so, please explain.

17.    Where are you employed?

18.    If you are married, where is your spouse employed?

**Defendant**:

1.     Do you know any of the: (1) lawyers or law firms involved in this case; (2) the witnesses; (3) the parties?

2.     As jurors, the court will instruct you about the law that applies to this case. Can you apply the law, not as you believe it should be or would want it to be, but only as instructed by the court, even if you personally disagree?

3.     If, after hearing the evidence in this case and the Judge's instructions, you found that the defendants have not violated any of the plaintiffs' rights, would you have any difficulty deciding in the defendants' favor, even though the plaintiffs would receive no monetary award?

4.     Have you or a member of your family or any close friends ever been employed by the State of Connecticut? If so, please state who was employed by the State, describe the position held, state when the position was held?

5.     If you are employed, please state:

    A.     the name of your employer;

    B.     your job title;

    C.     time you have been employed with current employer.

6.     If you have a spouse who is employed, please state:

    A.     the name of your spouse's employer;

    B.     your spouse's job title;

    C.     your spouse's time with current employer.

7.     Have you ever held a position entailing supervisory responsibility including the right to hire, fire, discharge, discipline and/or reprimand employees?

8.    Have you, or any member of your family, ever been sued by the State of Connecticut or other governmental agency? Have you or any member of your family ever brought suit against the State of Connecticut or other governmental agency?

9.    Many of the witnesses in this case are employed by the State of Connecticut, Department of Correction (DOC). Have you, any member of your family or circle of friends had a personal experience with any member or members of DOC such that it would make it difficult to consider their testimony impartially and fairly?

10.    This case involves allegations of race and ethnicity discrimination. Have you or any member of your family had any personal experience that would make it difficult for you to consider such claims impartially and fairly with respect to all parties?

11.    Have you, or any member of your family or circle of friends, ever been demoted, terminated or denied a job opportunity or denied a promotion by your/his/her employer? If the answer to the foregoing question is yes, do you feel that you/such person was treated unfairly, and if so, why? Do you feel that the treatment by that employer might affect your ability to judge this case fairly and impartially, and if so, in what way?

12.    Have you, or any member of your family or circle of friends, ever filed a complaint or lawsuit against your/his/her employer? If the answer to the foregoing question is yes, what was the nature and circumstances of the complaint? Do you think that your experience regarding the complaint and its result might affect your ability to judge this case fairly, and if so, in what way?

13.     Have you, or any member of your family or circle of friends been treated unfairly by your/his/her employer because of age, race, national origin, color, gender, disability or religious association?  If so, please provide the details and state whether this might affect your ability to judge this case fairly and impartially.

14.     Have you, or any member of your family or circle of friends ever been a plaintiff or defendant in a lawsuit?  If so, please provide details and state whether this might affect your ability to judge this case fairly and, if so, in what way.

15.     Have you, or any member of your family or circle of friends ever been a witness in a lawsuit?  If so, please provide the details and state whether this experience might affect your ability to judge this case fairly, and if so, in what way.

16.     Have you, or any member of your family or circle of friends ever belonged to any civil rights or civil justice organization.  If so, please provide details and state whether this might affect your ability to judge this case fairly, and if so, in what way.

17.     Have you ever served on a jury before?  If the answer is yes, please state when and what type of case?

### 10.    LIST OF WITNESSES:

**For the Plaintiff:**

1.     The plaintiff will testify concerning all allegations of her complaint.

2.     C. O. Bruce Denby will testify concerning disparate treatment of the plaintiff and racial discrimination against the plaintiff.

3.     C. O. Robert Taylor will testify concerning disparate treatment of the plaintiff and racial discrimination against the plaintiff.

4. Kim Newland-Carter, 85 Lexington Street, New Britain, CT 06052, will testify concerning the plaintiff's damages.

5. Robert C. Jackson, Jr., DOC, will testify concerning disparate treatment of African-American employees of the defendant.

6. Michael Bivans, DOC, will testify concerning disparate treatment within the defendant.

7. Andre Brown, DOC, will testify concerning disparate treatment by the defendant respecting arrests of officers.

8. Scott Tetreault, DOC, will testify concerning disparate treatment by the defendant respecting arrests of officers..

9. James Long, DOC, will testify concerning disparate treatment by the defendant respecting arrests of officers.

10. Quinn Vereen, DOC, will testify concerning disparate treatment by the defendant respecting arrests of officers.

11. Alvin Vernon, DOC, will testify concerning disparate treatment by the defendant respecting arrests of officers.

12. Mark Tourangeau, DOC, will testify concerning disparate treatment by the defendant respecting officers who have been placed on accelerated rehabilitation.

13. Steven Rumore, DOC, will testify concerning disparate treatment by the defendant respecting arrests of officers.

14. Leonard Burke, DOC, will testify concerning disparate treatment by the defendant respecting arrests of officers.

15. Michael Mahoney, DOC, will testify concerning disparate treatment by the defendant respecting arrests of officers.

16. Gregory Williams, DOC, will testify concerning disparate treatment by the defendant respecting arrests of officers.

17. Richard Bromley, DOC, will testify concerning disparate treatment by the defendant respecting arrests of officers.

18. David Cassidy, DOC, will testify concerning disparate treatment by the defendant respecting arrests of officers.

19.    Frank Babjak, DOC, will testify concerning disparate treatment by the defendant respecting arrests of officers.

20.    Joseph Valente, DOC, will testify concerning disparate treatment by the defendant respecting arrests of officers.

21.    Richard Bellemare, DOC, will testify concerning disparate treatment by the defendant respecting arrests of officers.

22.    Ronald Barraza, DOC, will testify concerning disparate treatment by the defendant respecting arrests of officers.

23.    David Cutter, DOC, will testify concerning disparate treatment by the defendant respecting arrests of officers.

24.    Michael Fare, DOC, will testify concerning disparate treatment within the defendant.

25.    Israel Ramos, DOC, will testify concerning disparate treatment within the defendant.

26.    Rick Henault, DOC, will testify concerning disparate treatment within the defendant.

27.    John Gaza, DOC, will testify concerning disparate treatment within the defendant.

28.    Michael Mahoney, DOC, will testify concerning disparate treatment within the defendant.

29.    Janet Fountain, DOC, will testify concerning disparate treatment within the defendant.

30.    James Waterman, DOC, will testify concerning disparate treatment within the defendant.

31.    Harris Porter, DOC, will testify concerning racial discrimination within the defendant and concerning the actions of Patty Gonzalez.

32.    Theresa Lantz, DOC Commissioner, will testify concerning discipline imposed on the plaintiff in comparison to that imposed upon other officers similarly situated.

33.    James Outlaw, DOC, will testify concerning racial discrimination within the defendant.

**For the Defendant:**

1.    Eunice Smith, plaintiff, will testify as to all of the claims that she has raised in this lawsuit.

2.    John Armstrong, former Commissioner of Correction, will testify as to his knowledge of plaintiff, his knowledge of plaintiff's employment and his involvement as to the decisions that he and others have made vis-à-vis plaintiff's employment.

3.    Theresa Lantz, Commissioner of Correction, will testify as to her knowledge of plaintiff, her knowledge of plaintiff's employment and her involvement as to the decisions that she and others have made vis-à-vis plaintiff's employment.

4.    Daniel Callahan, DOC Human Resource Director, will testify as to his knowledge of plaintiff, his knowledge of plaintiff's employment and his involvement as to the decisions that he and others have made vis-à-vis plaintiff's employment.

5.    Mary M. Marcial, Director of Programs and Treatment, DOC will testify as to her knowledge of plaintiff, her knowledge of plaintiff's employment and her involvement as to the decisions that she and others have made vis-à-vis plaintiff's employment.

6.    Peter Murphy, DOC Warden, will testify as to his knowledge of plaintiff, his knowledge of plaintiff's employment and his involvement as to the decisions that he and others have made vis-à-vis plaintiff's employment.

7.    Eric Sousa, DOC Lieutenant, will testify as to his knowledge of plaintiff, his knowledge of plaintiff's employment and his involvement as to the decisions that he and others have made vis-à-vis plaintiff's employment.

8.      Donald J. Kruk, former DOC Director of Affirmative Action, will testify as to his knowledge of plaintiff, his knowledge of plaintiff's employment and his involvement as to the decisions that he and others have made vis-à-vis plaintiff's employment and Affirmative Action complaints.

9.      Troopers and/or State Police Personnel who have personal involvement in incidents of 01-17-03 and 01-19-03 will testify about knowledge involving plaintiff, Eunice Smith.

10.     Assistant Sate's Attorney Christopher Pelosi who prosecuted plaintiff, Eunice Smith for incidents 01-17-03 and 01-19-03, will testify about the disposition and underlying facts involving the disposition of plaintiff's criminal case.

11.     Patricia Gonzalez will testify as to her involvement with plaintiff in 01-17-03 incident.

12.     Remi Acosta, DOC Warden, will testify as to his knowledge of plaintiff, his knowledge of plaintiff's employment and his involvement as to the decisions that he and others have made vis-à-vis plaintiff's employment.

13.     Charles Lee, DOC Warden, will testify as to his knowledge of plaintiff, his knowledge of plaintiff's employment and his involvement as to the decisions that he and others have made vis-à-vis plaintiff's employment.

14.     Terri Hagens, DOC Security Division, will testify as to her investigation of plaintiff's complaints and/or complaints by others about plaintiff.

15.     Michael Bivens, DOC Affirmative Action Officer, will testify as to plaintiff's complaints and/or complaints by others about plaintiff.

16.    Nelvin Levester, former DOC Warden, will testify as to his knowledge of plaintiff, his knowledge of plaintiff's employment and his involvement as to the decisions that he and others have made vis-à-vis plaintiff's employment.

17.    Clinical Psychologist Harold Fisher will testify as to treatment of plaintiff and statements made by her.

18.    Gregory Barnette, DOC Lieutenant, will testify as to his knowledge of plaintiff, his knowledge of plaintiff's employment and his involvement as to the decisions that he and others have made vis-à-vis plaintiff's employment.

19.    Kimberly Weir, DOC Major, will testify as to her knowledge of plaintiff, her knowledge of plaintiff's employment and her involvement as to the decisions that she and others have made vis-à-vis plaintiff's employment.

20.    Clinical Psychologist Kim Newland-Carter will testify as to treatment of plaintiff and statements made by her.

21.    Michael Donohue, DOC Major, will testify as to his knowledge of plaintiff, his knowledge of plaintiff's employment and his involvement as to the decisions that he and others have made vis-à-vis plaintiff's employment.

22.    Charles Ruffin, DOC Captain, will testify as to his knowledge of plaintiff, his knowledge of plaintiff's employment and his involvement as to the decisions that he and others have made vis-à-vis plaintiff's employment.

23.    Joseph Civitello, former DOC Affirmative Action Officer, will testify as to his knowledge of plaintiff, his knowledge of plaintiff's employment and his involvement as to the decisions that he and others have made vis-à-vis plaintiff's employment and Affirmative Action complaints.

14

24.    DOC representative from Labor Relations will testify as to plaintiff's numerous grievances and disciplines.

25.    DOC representative from Affirmative Action will testify as to plaintiff's numerous complaints and the corresponding DOC investigations.

26.    DOC representative from Human Resources will testify as to plaintiff's numerous grievances, disciplines and involvement in personnel matters.

27.    Alphonso Reyes, DOC Lieutenant, will testify as to his knowledge of plaintiff, his knowledge of plaintiff's employment and his involvement as to the decisions that he and others have made vis-à-vis plaintiff's employment and Affirmative Action complaints.

The defendant reserves the right to add witnesses for rebuttal purposes and in response to allegations that become more clear as evidence continues to be presented in this case.

## 11.    LIST OF EXHIBITS:

### For the Plaintiff

1.    EEOC Right to Sue Letter.

2.    NP4-Performance Appraisal 1997-98.

3.    NP-4 Performance Appraisal 1998-99.

4.    NH-4 Performance Appraisal 1999-2000.

5.    NP-4 Performance Appraisal 2000-01.

6.    N-4 Performance Appraisal 2001-02.

7.    NP-4 Performance Appraisal 2002-03.

8.    Post Conciliation Stipulated Agreement dated January 9, 1997.

9.    Stipulated Agreement dated May 5, 2000.

10.    Porter to Murphy 5/8/01.

11.    CHRO Complaint dated 3/5/02.

12.    Smith to Armstrong dated 3/26/02.

13.    Ryan to Smith dated 4/2/02.

14.    Employee Pre-Disciplinary Conference Notice dated 4/11/02.

15.    Ryan to Munroe dated 4/12/02.

16.    Murphy to Smith dated 6/13/02.

17.    Smith to Rosenbaum dated 7/8/02.

18.    Levester to Smith dated 8/27/02.

19.    Smith to Arpin dated 10/14/02.

20.    Smith to Civil Rights Division dated 11/19/02.

21.    Kelly to Lobby Officers dated 12/23/02.

22.    Smith statement to CSP 1/17/03.

23.    Smith statement to DOC 1/17/03.

24.    Porter statement to DOC 1/17/03.

25.    Porter statement to CSP 1/17/03.

26.    Ruffin report 1/17/03.

27.    Consent to Search.

28.    Acosta to Smith dated 1/17/03.

29.    Armstrong to Coyle dated 1/21/03.

30.    Drabik to Callahan and Huckabey dated 1/29/03.

31.    Callahan to Smith dated 3/20/03.

32.    Smith statement to Davis 4/22/03.

33.    Arnold statement to DOC 4/30/03.

34.    Smith to Lantz dated 5/12/03.

35.    Coutant to Sienkiewicz dated 8/27/03.

36.    Employee Pre-Disciplinary Conference Notice dated 8/27/03.

37.    Pre-Disciplinary Hearing report dated 9/17/03.

38.    Disciplinary Hearing report signed 9/25/03.

39.    Security Division Routing Form completed 9/25/03.

40.    Lee to Smith dated 10/23/03.

41.    Silva to Smith dated 11/3/03.

42.    Information in CR03-0567802.

43.    Transcript of *State v. Smith*, 8/3/05.

44.    CHRO Fact-Finding Report dated February 2003.

45.    Discipline Analysis dated April 2003.

46.    Disciplinary Log dated 5/17/04.

47.    KNC Associates medical reports.

48.    Chrysalis Center employment records.

**For the Defendant**:

1.    Memorandum of December 20, 1996 to "All Department of Correction Employees" written by John J. Armstrong, Commissioner with cover letter dated January 2, 1997.

2.    Letter of January 28, 1997 to Eunice Smith by Donald J. Kruk

17

3.    Personal Weapon Storage Application by Eunice Smith with permit and Hartford Correctional Center Personal Weapons Storage Policy (5 pages).

4.    Memo dated August 6, 1999 to "Complex Wardens, Wardens, Unit Heads" re: Workplace Violence/Storage of Weapons (15 pages).

5.    Connecticut Department of Public Safety documents re: Incident of 01-17-03 at HCC (18 pages).

6.    Letter of January 17, 2003 from Warden Remi Acosta placing plaintiff on Administrative Leave.

7.    Letter of February 10, 2003 from Warden Remi Acosta to plaintiff.

8.    Notice of Final Agency Action dated August 26, 2003.

9.    Letter of October 23, 2003, from Warden Charles Lee to plaintiff.

10.    Arbitration Award Case No.: 2004-C-00019 dated October 17, 2005.

11.    DOC incident reports re: incident of 9-20-02 re: accessories in hair.

12.    DOC Incident reports re: incidents 2-3-02 and 1-29-02.

13.    Memo to Correctional Officer Smith from Capt. Ruffin dated March 14, 2002.

14.    August 27, 2002 letter from John Armstrong to Eunice Smith.

15.    September 18, 2003 letter from John Armstrong to Eunice Smith.

16.    December 20, 2002 memo from Robert Jackson to Eunice Smith.

17.    March 20, 2002 letter from Donald Kruk to plaintiff.

18.    October 23, 2002 Notice of 5 Day Suspension.

19.    August 27, 2002 Notice of 1 Day Suspension.

20.    June 13, 2002 Notice of 1 Day Suspension.

21.     Letter of March 20, 2003 from Dan Callahan to plaintiff.

22.     Plaintiff's responses to Defendants Interrogatories and Requests for
Production.

23.     Letter of March 4, 2002, from Donald Kruk to plaintiff.

24.     Videotape of plaintiff doing rounds in February 2002.

25.     Memo from Joseph Civitello to Donald Kruk dated March 4, 2002.

26.     Performance evaluations for plaintiff.

27.     February 15, 2003 letter from plaintiff to Warden Acosta.

28.     Letter of March 26, 2003 from Warden Acosta to plaintiff.

29.     Fax/memo from plaintiff to Commissioner Armstrong.

30.     Statement/incident report of DOC Lt. Gregory Barnette dated October 2,
2002 (3 pages).

31.     Documents pertaining to incident of February 2, 2002.

32.     Documents regarding AA Grievance filed by Eunice Smith dated
September 26, 2001 regarding Todd Case and Mitch Drabik.

33.     Documents regarding AA Grievance filed by Eunice Smith against Nelvin
Levester.

34.     Documents regarding AA Grievance filed by Eunice Smith dated January
16, 2002, regarding Nora Ryan.

35.     Documents regarding AA Complaint filed by Eunice Smith dated
February 25, 2002, regarding Donald Guilbert.

36.     Documents regarding AA Grievance filed by Eunice Smith regarding
alleged Racial and Sexual Discrimination and Harassment at DOC.

37. Informal oral counseling record and supporting documentation regarding incident of October 2, 2001.

38. Documents regarding AA Grievance filed by Eunice Smith dated August 28, 2001 regarding Kenneth Smith.

39. Documents regarding various "bathroom break" incidents involving Eunice Smith.

40. Documents concerning AA Grievance filed by Eunice Smith dated November 14, 2001 regarding Lieutenant Godding.

41. Employee Formal Counseling record dated January 4, 2001 (inappropriate log entries).

42. DOC Administrative Investigation – regarding passing out union literature prior to shift.

43. Documents concerning AA Grievance filed by Eunice Smith regarding video taping by Lieutenant Barnette.

44. Documents concerning HCC Internal Investigation regarding incident of March 22, 2002 and Lt. Sousa.

45. Ruling on Defendants, AFSCME Council 4 and Salvatore Luciano's Motion to Dismiss – case No. 05cv829(JBA).

46. Memorandum of Decision No. CV-05-401844 dated November 21, 2006.

47. Medical Records re: Eunice Smith from and by Kim Newland-Carter.

48. Medical Records re: Eunice Smith from and by Dr. Anne Pinou.

49. Docket No. CR03-0567802-S – State v. Eunice Smith – transcript of proceedings dated August 4, 2003.

50.    Various portions of clerk files in CR03-0567802-S.

51.    Waiver dated August 4, 2003.

52.    Waiver dated August 1, 2003.

53.    Letter dated August 4, 2003 from Eunice Smith to Patricia Gonzalez.

54.    Investigation file #HCC-IR02-946.

55.    Plaintiff's Response to Defendants' (Supplemental) Interrogatories and request for Production.

56.    Deposition of Eunice Smith for impeachment purposes.

57.    Various portions of prosecutor's file in CR-03567802-S.

58.    Court transcript dated June 17, 2003 re:  CR030567882 [sic].

59.    Letter from Attorney Steven D. Anderson dated February 4, 2004.

60.    Withdrawn as to Defendant Gonzalez dated February 18, 2004.

61.    Letters of Discipline to Eunice Smith from personnel file.

62.    Hartford CC informal counseling and facility investigation into failure to log out for bathroom break.

63.    Formal Counseling record signed January 4, 2002.

64.    DOC Security Division investigation SD03-07 regarding incident of January 17, 2003.

65.    DOC Central Intelligence Unit Investigation CIU-II 301.

66.    DOC Central Intelligence Unit Investigation CIU-II 741.

67.    DOC Central Intelligence Unit Investigation CIU-II 813.

68.    DOC facility Investigation HCC -02-184 (union activity – CIU-II 213).

69.    DOC facility Investigation HCC -02-290 (union activity – CIU-II 283).

70. DOC facility Investigation HCC -02-217 (union activity – CIU-II 284).

71. DOC facility Investigation HCC -02-946 (union activity – CIU-II403).

72. DOC facility Investigation HCC -02-1656 (union activity - CIU #571).

73. Affirmative Action Grievance/Investigation *Eunice Smith v. Mitch Drabik.*

74. Affirmative Action Grievance – AA03AA148.

75. Affirmative Action Grievance/Investigation *Eunice Smith v. Gilbert.*

76. Affirmative Action Grievance/Investigation *Eunice Smith v. Alphonso Reyes.*

77. Affirmative Action Grievance/Investigation *Eunice Smith v. Godding.*

78. Affirmative Action Grievance/Investigation *Eunice Smith v. Gregory Barnette.*

79. Affirmative Action Grievance/Investigation *Eunice Smith v. Nora Ryan.*

80. Affirmative Action Grievance/Investigation *Eunice Smith v. K. Smith.*

81. Affirmative Action Grievance/Investigation *Eunice Smith v. Eric Sousa.*

82. Affirmative Action Grievance/Investigation *Eunice Smith v. Nelvin Levester.*

The defendants reserve the right to introduce additional exhibits in rebuttal and in response to exhibits or claims that are presented at trial.

**12.    DEPOSITION TESTIMONY:** Not applicable.

**13.    JURY INSTRUCTIONS:**

**Plaintiff's Requests to Charge**

1.    To prevail on a claim of intentional discrimination, the plaintiff must prove by a preponderance of the evidence, either directly or indirectly, that there is evidence of intentional discrimination. Direct evidence would include oral or written statements showing a discriminatory motivation for the defendant's treatment of her. Indirect or circumstantial evidence would include proof of a set of circumstances that would allow one reasonably to believe that race or retaliation was a motivating factor in the defendant's treatment of the plaintiff. [McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981); Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions  104.03.]

2.    The plaintiff is entitled to prevail in this case if she shows that discrimination was a motivating -- as opposed to determining -- factor in the challenged employment decisions or any one of them. [Devitt, etc.,  104.03.]

3.    Direct evidence is evidence of remarks or actions that, if believed, directly prove that the plaintiff's membership in a protected class or retaliation was a factor in the defendant's adverse employment decision. [Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).]

4.    To establish discrimination in terminating the plaintiff from a position for which she was qualified by using indirect evidence, the plaintiff must prove what is called a prima facie case of ethnicity discrimination or retaliation. To establish a prima facie case, the plaintiff must prove each of the following elements by a preponderance of

the evidence: (1) that she was a member of a protected group; (2) that she was qualified for the position in question; (3) that she held the position in question; (4) that despite her qualifications she was demoted or terminated; (5) that subsequently either the position remained open or the employer awarded it to a person who was not a member of the protected class or that the defendant has engaged in a pattern of treating minority employees less favorably than its similarly situated Caucasian employees. [McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Legrand v. Trustees of University of Arkansas, 821 F.2d 478 (8th Cir. 1987), cert. denied, 485 U.S. 1034 (1988); Blackwell v. Sun Electric Corp., 696 F.2d 1176 (6th Cir. 1983); Cockrham v. South Central Bell Telephone Co., 695 F.2d 143 (5th Cir. 1983); Meiri v. Dacon, 759 F.2d 989 (2d Cir.), cert. denied, 474 U.S. 829 (1985); Geisler v. Folsom, 735 F.2d 991 (6th Cir. 1984); Robinson v. Arkansas State Highway & Transportation Commission, 698 F.2d 957 (8th Cir. 1983); Lerma v. Bolger, 689 F.2d 589 (5th Cir. 1982).]

5.    To establish retaliation against the plaintiff for having filed a complaint of unlawful employment discrimination, the plaintiff must prove: (1) that she filed such a complaint; (2) that she thereafter suffered some form or forms of adverse treatment from the defendant; (3) that the filing of her complaint was a motivating factor in bringing about that adverse treatment. If the plaintiff has proven these three things, you must return a verdict in favor of the plaintiff on her retaliation claim. [Levin v. Analysis & Technology, Inc., 960 F.2d 314 (2d Cir. 1992); Medina-Munoz v. R. J. Reynolds Co., 896 F.2d 5 (1st Cir. 1990); Rizzo-Puccio v. College Auxiliary Services, Inc., 216 F.3d 1073 (2d Cir. 2000).]

6.     As to all of her employment discrimination claims, it is necessary only that the plaintiff prove that the defendant in fact took some adverse employment action against her and that her protected status was a factor which played a part in the defendant's decision; in other words, that the defendant had a discriminatory purpose or motive. [Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1101 (8th Cir. 1988).]

7.     If you determine that the defendant discriminated against the plaintiff, then you must determine the amount of damages that she has suffered as a result. You may award as actual damages an amount that reasonably compensates the plaintiff for any lost wages and benefits, taking into consideration any increases in salary and benefits, including pension, that she would have received had she not been discriminated against. Basically, you have the ability to make the plaintiff whole for any wages or other benefits that she has lost as a result of the discrimination against her. [Lorillard v. Pons, 434 U.S. 575 (1978); Faris v. Lynchburg Foundry, 769 F.2d 958 (4th Cir. 1985); Blum v. Western Electric Co., 731 F.2d 1473 (10th Cir. 1984); Devitt, etc., supra, 104.06, 104A.11.]

8.     You shall also calculate separately, as future damages, a monetary amount equal to the present value of the wages and benefits that the plaintiff would have earned had she not been discriminated against for that period from the date of your verdict until the date when she would have voluntarily resigned, retired or obtained other employment. [Maxfield v. Sinclair International, 766 F.2d 788 (3d Cir. 1985); Blum v. Witco Chemical Corp., 829 F.2d 367 (3d Cir. 1987); Devitt, etc., supra,    104.05, 104.06, 104A.11.]

9.    The plaintiff has alleged that, as a result of the defendants' intentional discrimination, she has suffered mental anguish, inconvenience and humiliation. The plaintiff has the burden of proving any compensatory damages by a preponderance of the evidence. If you determine that the plaintiff has proven by a preponderance of the evidence that she has experienced mental anguish, inconvenience or humiliation, you may award her damages for those injuries. No evidence of the monetary value of such intangible things as pain and suffering has been, or needs to be, introduced into evidence. No exact standard exists for fixing the compensation to be awarded for these elements of damages. The damages that you award must be fair compensation -- no more and no less. When considering the amount of monetary damages to which the plaintiff may be entitled, you should consider the nature, character, and seriousness of any mental anguish, inconvenience or humiliation she felt. You must also consider its extent or duration, as any award you make must cover the damages endured by the plaintiff since the wrongdoing, to the present time, and even into the future if you find as fact that the proofs presented justify the conclusion that Ms. Smith's emotional stress and its consequences have continued to the present time or can reasonably be expected to continue in the future. [Devitt, etc., supra,    104.05, 104.06, 104A.11; Adams v. Doehler-Harvis, 144 Mich. App. 764 (1985); Freeman v. Kelvinator, Inc., 569 F. Supp. 999 (E.D. Mich. 1979); Slayton v. Michigan Host, Inc., 122 Mich. App. 411, 332 N.W.2d 498 (1983); Riethmiller v. Blue Cross, 151 Mich. App. 188, 390 N.W.2d 227 (1986).]