Defendant's Requests to Charge

## INSTRUCTION NO. 1

## TITLE VII CLAIM

**A.    Discrimination Based on Race.**

### Purpose of the Statute

Title VII prohibits employers from refusing to hire, discharge from employment or discriminate against individuals on the basis of race, color, sex, national origin and religion.[1]  The purpose of Title VII is to prevent discrimination in the workplace.  Under the "disparate treatment of discrimination" theory, the plaintiff/employee claims that she has been treated less favorably than other similarly situated employees because of her race.  The plaintiff/employee must then prove that the defendant/employer acted with discriminatory animus.

---

[1]    42 U.S.C. § 2000e-(2).

## Burden of Proof

The burden of proof is as follows.  First, the plaintiff must establish by a preponderance of the evidence that: (1) she is a member of a protected class;  (2) she was performing her job satisfactorily; and (3) she suffered an adverse employment action, (4) under circumstances giving rise to an inference of discrimination.  The burden then shifts to the defendant to present a legitimate, nondiscriminatory reason for its decision.[2] If the defendant asserts a legitimate, nondiscriminatory reason for its decision, the burden shifts back to the plaintiff to prove that the defendant's stated reason for its decision was not its true reasons, but was a pretext for discrimination. At this stage, the plaintiff must satisfy her ultimate burden in this case, that is, persuading you that the defendant intentionally discriminated against her because of her race.[3]

## Preponderance of the Evidence Standard

To prevail on a claim of intentional discrimination, the plaintiff must prove by a preponderance of the evidence that the defendant had a reason or motive to discriminate against her. "Preponderance of the evidence" means evidence that has more convincing force than that opposed to it.  If the evidence is so evenly balanced that you are unable to say that the evidence on either side of an issue preponderates, your finding on that issue must be against the party who had the burden of proving it.

---

[2]     Authority:  McDonnell Douglas Corp. V. Green, 411 U.S. 792 (1973); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142, 120 S. Ct 2097, 2106 (2002);  McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1999).

[3]     Authority:  St. Marys Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993); Brennan v. Metropolitan Opera Ass'n., Inc., 192 F.3d 310, 317 (2d Cir. 1999); Fisher v. Vassar College, 114 F.3d 1332, 1336 (2d Cir. 1997); Bailey v. Colgate-Palmolive Co., 2003 U.S. Dist. LEXIS 8175 (S.D.N.Y. 2003).

The plaintiff must prove, either directly or indirectly, that there is evidence of intentional discrimination. Direct evidence would include oral or written statements showing a discriminatory motivation for the defendant's treatment of the plaintiff. Indirect or circumstantial evidence would include proof of a set of circumstances that would allow one to reasonably believe that race was a motivating factor in the defendant's treatment of the plaintiff.

To determine whether the defendant intentionally discriminated against the plaintiff under Title VII, you must decide whether race accounted for the employer's decision to terminate the plaintiff from her position.

### Direct Evidence of Disparate Treatment

Direct evidence is evidence of remarks or actions that, if believed, directly prove that the plaintiff's race was a factor in the defendant's actions.

### Indirect Evidence of Disparate Treatment

In this case, the plaintiff must prove by a preponderance of her evidence that her race was a motivating factor in the defendant's decisions. The plaintiff's race was a motivating factor if you find that it played an impermissible role in the defendants' decision, even though other factors may have also played roles in that decision.

You must consider any legitimate nondiscriminatory reason or explanation stated by the defendant for its decision. If you find that the defendant has stated a valid reason, then you must decide in favor of the defendant unless the plaintiff proves by a preponderance of the evidence that the stated reason was not the true reason but is only a pretext or excuse for discriminating against the plaintiff because of her membership in a protected class.

If you determine that plaintiff's race was a substantial motivating factor in the claimed adverse decisions of the Department of Correction, you must find for the plaintiff. If, on the other hand, you find that plaintiff's race was not a motivating factor in the decisions, you must find for the defendant Department of Correction.

### Pretext

The plaintiff can attempt to prove pretext directly by persuading you by a preponderance of the evidence that her membership in a protected class was more likely the reason for the defendant's adverse employment decision than the reason stated by the defendant. The plaintiff can also attempt to prove that the defendant's stated reason for its employment decisions regarding the plaintiff is a pretext by persuading you that it is just not believable.

It is plaintiff's burden to show that the Department of Corrections' articulated, legitimate non-discriminatory reason behind its decision to terminate her employment was (1) false and (2) that more likely than not race discrimination was the real reason for her discharge. [4]

It is the plaintiff's burden to put forth adequate evidence to support a rational finding that the nondiscriminatory reasons put forth by the defendant employee are pretext, and the employee's race was the real reason behind the employer's decision to terminate plaintiff. [5]

---

[4]    Authority: <u>Weinstock v. Columbia University</u>, 224 F.3d 33, 42, 50 (2d Cir. 2000).

[5]    Authority: <u>Viola v. Philips Med. Sys. of North America</u>, 42 F.3d 712, 717 (2d Cir. 1994).

When you consider the plaintiff's evidence that the reason advanced by the defendant is a pretext, keep in mind that the relevant question is whether the defendant's reason was not the real reason for its action(s). The question is not whether the defendant's reason showed poor or erroneous judgment.

You are not to judge the defendant's wisdom for making the selection it did. The fact that you may personally disagree with the choices made by the defendant is not proof of discrimination. The defendant would be entitled to make its decision for a good reason, a bad reason or for no reason at all, so long as the decision was not motivated by unlawful discrimination.[6]

It is not enough for the plaintiff simply to prove that the defendant's stated reason for its decision was not the true reason. The reason for this is that the plaintiff always must prove by a preponderance of the evidence that she was treated differently because of her race. Therefore, even if you decide that the defendant did not truly rely on the stated reason for its decisions, you cannot decide in favor of the plaintiff without further evidence that the defendant relied instead on the plaintiff's race.

Even if you find that the evidence supports an inference that the plaintiff's race was a motivating factor in the defendant's decision to terminate her, the plaintiff may not recover if the defendant establishes by a preponderance of evidence that it would have taken the same action under the circumstances.[7]

---

[6]  Authority: Blake-McIntosh v. Cadbury Beverages, Inc., 1999 U.S. Dist. LEXIS 16550 (D. Conn. August 10, 1999); Gray v. New England Tel. and Tel. Co., 792 F.2d 252, 255 (1st Cir. 1986); Smith v. Monsanto Chemical Co., 770 F.2d 719, 723 n. 3 (8th Cir. 1985), cert denied, 475 U.S. 1050 (1986).

[7]  Authority: Hargett v. National Westminster Bank, USA, 78 F.3d 836, 840 (2d Cir.), cert denied, 117 S.Ct. 84 (1996).

## INSTRUCTION NO. 2

## RACE AND/OR NATIONAL ORIGIN DISCRIMINATION

Now I will instruct you on the law of discrimination. The plaintiff relies on a theory of discrimination called "hostile work environment" harassment. In order to establish her hostile work environment claim, the plaintiff must prove by a preponderance of the evidence that the workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment. Conduct is not severe or pervasive under the law if it is isolated or sporadic. Plaintiff must establish, by a preponderance of the evidence, that the conduct at issue was repetitious and continuous. In other words, the plaintiff must provide more than a few isolated incidents of racial and national origin harassment. Casual comments, accidental statements, or sporadic conversation are insufficient. If you find that the incidents at issue were merely isolated incidents or occasional episodes, then the plaintiff has not established her claim and you must find for the defendant.[8]

---

[8]  Distasio v. Perkin Elmer Corp., 157 F.3d 55 (2d Cir. 1998); Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993); Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64-65 (1986); Carrero v. New York City Housing Authority, 890 F.2d 569 (2d Cir. 1989), superceded by statute on other grounds, Natale v. Mount Sinai Medical Ctr., 1993 U.S. Dist. LEXIS 8470, *3-4 (S.D.N.Y. Jun. 23, 1993); Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033 (2d Cir. 1993).

## INSTRUCTION NO. 3

## HARASSMENT BASED ON RACE AND/OR NATIONAL ORIGIN

To prevail on a hostile work environment claim, the plaintiff must also prove by a preponderance of the evidence that any alleged harassment was because of her race and/or national origin. Evidence regarding any other harassment or discrimination is not relevant to determining whether the defendant discriminated against the plaintiff on the basis of her race and/or national origin. You cannot find in favor of the plaintiff unless she establishes that the defendant harassed her because of her race and/or national origin.[9]

## SUBJECTIVE AND OBJECTIVE COMPONENTS

The plaintiff must also show that she both (1) subjectively, and (2) reasonably, or objectively, perceived her work environment to be hostile or abusive. In other words, the plaintiff must prove that she <u>actually</u> considered her work environment to be hostile or abusive and that a reasonable person would also consider it hostile or abusive. Thus, the plaintiff must prove that she subjectively believed it was hostile and it was hostile from an objective point of view.[10]

The burden of establishing an objectively hostile or abusive work environment is substantial. You must consider the evidence from the perspective of a reasonable person's reaction to a similar environment under similar circumstances. You cannot view

---

[9]  Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 63-69 (1986); Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1060 (5th Cir. 1998); Kelly v. Boeing Petroleum Servs., Inc., 61 F.3d 350, 358 (5th Cir. 1995); Rauh v. Coyne, 744 F. Supp. 1181, 1183 (D.D.C. 1990).

[10]  Mormol v. Costco Wholesale Corp., 364 F.3d 54, 58 (2d Cir. 2004).

the evidence from the perspective of an overly sensitive person.[11] Rather, you must evaluate the total circumstances and determine whether the alleged harassing behavior could be objectively classified as the kind of behavior that would seriously affect the psychological well-being of a reasonable person.

Furthermore, to prevail on her racial and/or national origin claim, the plaintiff must establish that the conduct she complains of was unwelcome. The law permits you to look to the following factors when making a determination of whether the plaintiff felt that the conduct at issue was unwelcome:

1.   Whether the plaintiff by her own conduct indicated that the racial conduct was unwelcome;

2.   Whether the plaintiff substantially contributed to the alleged hostile environment by her own conduct; and

3.   Whether the plaintiff at some point made known to her co-workers that the conduct would be considered offensive and unwelcome from that point forward.

Here, the plaintiff's own conduct at the Department of Correction towards her co-workers may be relevant to your determination of whether he felt that the conduct at issue was unwelcome. You may find for the defendant if you determine that the plaintiff's own conduct encouraged, provoked, or welcomes the conduct she now complains of.

---

[11]   Koschoff v. Henderson, 109 F. Supp. 2d 332, 348 (E.D.Pa. 2000) (objective component checks "overly sensitive" plaintiffs), aff'd, 35 Fed. Appx. 357 (3 rd Cir. 2002).

## INSTRUCTION NO. 4

### BUSINESS JUDGMENT

As you consider the evidence you must keep in mind that the employer's business judgment is not the issue, but rather your must focus solely on the employer's motivation for its action.[12] The plaintiff must show more than that the Defendant made an unwise business decision or an unnecessary personnel move, or acted arbitrarily. Good faith errors in an employers' business judgment are not, standing alone, evidence of discrimination.[13] Your job is not to second guess the defendant's business judgment; your job is to determine if the judgment, whether wise or foolish, was motivated by discrimination.[14] The defendant may rely on subjective reasons, but you must weigh the credibility of the subjective reasons to determine if you believe the reasons given.[15]

---

[12]    Blake-McIntosh v. Cadbury Beverages, Inc., 1999 U.S. Dist. LEXIS 16550, at *35 (D. Conn. August 10, 1999), Gray v. New England Tel. And Tel. Co., 792 F.2d 251, 255 (1st Cir. 1986).

[13]    Smith v. Monsanto Chemical Co., 770 F.2d 719, 723 n.3 (8th Cir. 1985), cert. denied, 475 U.S. 1050 (1986); Cowan v. Glenbrook Security Servs. Inc., 123 F. 3d 438, 445-46 (1997); Stemmons v. Missouri Dept. of Corrections, 82 F.3d 817, 819 (8th Cir. 1996); Mungin v. Kattin Muchin & Zarvis, 116 F.3d 1549, 1556 (D. C. Cir. 1997).

[14]    Stone v. Bd. of Educ., 153 Fed. Appx. 44, 46 (2d Cir. 2005); see also Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1330 (10th Cir. 1999), cert. denied,  528 U.S. 815 (1999); Fischbach v. D.C. Dep't of Corr., 318 U.S. App. D.C. 186, 86 F.3d 1180, 1183 (D.C. Cir. 1996).

[15]    Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 105 (2d Cir. 2001).

## INSTRUCTION NO. 5

### RETALIATION UNDER TITLE VII

Mrs. Smith's next claim is that defendant DOC retaliated against her in violation of Title VII of the Civil Rights Act. In order to prevail on her claim of retaliation under Title VII, Mrs. Smith must prove by a preponderance of the evidence that:

(1)    She engaged in a protected activity. In other words, that she opposed employment practices which she reasonably and honestly believed were discriminatory;

(2)    Her employer was aware of that activity;

(3)    She suffered an adverse employment action; and

(4)    There is a causal link between the protected activity (the opposition to discrimination) and the adverse employment decision. In other words, the fact that Mrs. Smith engaged in the opposition to discrimination was a motivating factor in the defendant's decision to terminate her.[16]

### FIRST ELEMENT
### PROTECTED ACTIVITY

Mrs. Smith claims that the protected activity was her filing of claims of prior discrimination.[17]

---

[16]    Authority: <u>Galdieri-Ambrosini v. National Reality & Development Corp.</u>, 136 F.3d 276, 292 (2d Cir. 1998).

[17]    Authority: <u>Galdieri-Ambrosini</u>, 136 F.3d at 292.

**SECOND ELEMENT**
**EMPLOYER MUST BE AWARE OF ACTIVITY**

Next under the Title VII retaliation claim, Mrs. Smith must demonstrate that

defendant DOC knew that she participated in the opposition to discriminatory

employment practices.  In order to satisfy this element, she must demonstrate, by a

preponderance of the evidence, that defendant DOC knew about the filing of her previous

claims of discrimination.[18]

**THIRD ELEMENT**
**ADVERSE EMPLOYMENT ACTION**

The requirement of an "adverse employment action" has a specific meaning under

the law.  Not every decision by an employer that an employee dislikes constitutes an

adverse employment action.  An adverse employment action means a decision by the

employer that is materially adverse to the employee. It must be more disruptive than an

inconvenience or an alteration of job responsibilities. Such a change might include

termination of employment, a demotion evidenced by a decrease in wage or salary, a less

distinguished title, a material loss of benefits, or significantly diminished material

responsibilities.[19]

**FOURTH ELEMENT**
**CASUAL CONNECTION**

In order to recover on her claim of retaliation under Title VII, Mrs. Smith must

demonstrate that her participation in the protected activity or the filing of her previous

claims was a motivating factor in defendant DOC's decision to terminate her.

---

[18]    Authority:  Galdieri-Ambrosini, 136 F.3d at 292.

If a prima facie case is established, the burden shifts and defendant DOC must articulate a legitimate, nondiscriminatory reason for the adverse action. Once defendant DOC has dispelled the inference of retaliation by establishing a legitimate, nondiscriminatory reason, Mrs. Smith must demonstrate that the articulated reason was a pretext for discrimination.[20]

---

[19]    Authority: Galdieri-Ambrosini, 136 F.3d at 292.

[20]    Authority: Galdieri-Ambrosini, 136 F. 3d at 292.

## INSTRUCTION NO. 6

### REMEDIES UNDER TITLE VII - GENERAL

If you find in favor of the plaintiff on any of her claims under Title VII, then you

must consider the issue of damages. I will now instruct you on the laws that govern your

determination of damages. Bear in mind the fact that I am instructing you on the

elements of damages does not mean that I have any opinion on whether or not the

defendant should be held liable. I am instructing you on damages only so that you will

have guidance should you decide that the plaintiff is entitled to recovery.[21]

### COMPENSATORY DAMAGES UNDER TITLE VII

If you find that the plaintiff has proven her claims of racial and/or national origin

harassment, then you must decide what type of damages, if any, the plaintiff should

receive, and how large a payment, if any, she deserves. The fact that I am instructing you

concerning damages does not mean that I have any opinion as to whether the defendant

should, in fact, be held liable or whether the plaintiff has suffered any actual harm. You

must enter separate amounts for each type of damages, if any, on the verdict forms and

must not include the same items in more than one category.

### COMPENSATORY DAMAGES

In this matter you may award what is known as compensatory or actual damages,

and it is meant to cover lost pay and benefits, medical expenses, other financial harm, and

physical and emotional suffering. In weighing the issue of compensatory damages, you

must ask yourselves two initial questions: First, has the plaintiff proven by a

---

[21]    Authority: Adapted from 4 L. Sand, *et al.*, Modern Federal Jury Instructions, Instruction 77-1
        (September 1997).

preponderance of the evidence that she suffered actual harm; and second, has she proven by a preponderance of the evidence that the defendant's illegal conduct proximately caused that harm? The defendant's actions can be considered a proximate cause of the harm claimed by the plaintiff if they were a substantial factor in bringing about that harm. Conduct by a defendant that does not cause harm does not entitle a plaintiff to damages.

If you decide that the plaintiff has suffered specific harm due to the defendant's actions, then you must decide on the amount of money that will compensate her for this harm. It is for you, in the exercise of your best judgment, to say what is just and fair compensation, based on the damages proved by the plaintiff. There is no fixed formula for you to apply. However, you should not speculate or guess as to damages, and under no circumstances should you let sympathy, bias, or prejudice affect your consideration of the law and the evidence. While it is the plaintiff's burden to prove each element and item of damage by a preponderance of the evidence, she need not prove her damages with mathematical precision, but only with the degree of accuracy permitted by circumstances.

**PUNITIVE DAMAGES**

No amount of any compensatory damage award you make can be intended to punish the defendant. Federal law does not allow you to award punitive damages against the government or a government agency.[22] Therefore, you may not award damages intended to punish the defendant.

---

[22]    Cross v. N.Y. City Transit Auth., 417 F.3d 241, 254 (2d Cir. 2005).

**NOMINAL DAMAGES**

If you find in favor of the plaintiff on any of his claims, but also find that the plaintiff's damages have no monetary value, then you may return a verdict for the plaintiff in the nominal amount of one ($1.00) dollar.

**DOUBLE RECOVERY**

If you find for the plaintiff on any of his claims, you may only award damages once. Under no circumstances may you award duplicate damages. Essentially, the plaintiff may only recover once for the actual damages you find he sustained, if any.

## INSTRUCTION NO. 7

## MITIGATION

Any person who claims damages as a result of an alleged wrongful act of another has a duty under the law to use reasonable diligence under the circumstances to "mitigate," or minimize, those damages.[23] The law requires on an injured person to take advantage of reasonable opportunities he may have to prevent the aggravation of his injuries, so as to reduce or minimize the loss or damage.[24]

If you find the defendant Department of Correction is liable and that the plaintiff has suffered damages, the plaintiff may not recover for any item of damage she could have avoided through such reasonable effort.[25] It is the defendant's burden to show that the plaintiff could have avoided the damages. If you find that the plaintiff unreasonably failed to take advantage of an opportunity to lessen her damages, you should deny recovery for those damages which she would have avoided had she taken advantage of the opportunity.

Bear in mind that the question of whether the plaintiff acted "reasonably" with respect to the mitigation of damages is one for you to decide, as sole judges of the facts. Although the law will not allow an injured plaintiff to sit idly by when presented with an opportunity to mitigate, this does not imply that the law requires an injured plaintiff to exert himself or herself unreasonably or incur unreasonable expense in an effort to

---

[23]    Dailey v. Societe Generale, 108 F.3d 451, 456 (2d Cir. 1997) ("it is the plaintiff's duty to mitigate").

[24]    Dailey v. Societe Generale, 108 F.3d 451, 455 (2d Cir. 1997) ("a prevailing plaintiff in a Title VII case must attempt to mitigate her damages ").

mitigate, and it is the defendant's burden of proving that the damages reasonably could have been avoided.  In deciding whether to reduce plaintiff's damages due to some failure to mitigate, therefore, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendant has satisfied its burden of proving that the plaintiff's conduct was not reasonable.

## ADDITIONAL REQUESTS

The defendant respectfully requests leave to supplement its request for jury instructions after the evidence and prior to the charging conference.  This request is made in an abundance of caution and on the theory that the defendant can not reasonably anticipate how the evidence will be presented and what instructions, in addition to the foregoing and accompanying legal issues, will be necessary to enable the jury to reach their verdict.

---

[25]    Dailey v. Societe Generale, 108 F.3d 451, 458 (2d Cir. 1997).

14.     **ANTICIPATED EVIDENTIARY PROBLEMS:**

**PLAINTIFF:  NONE**

**DEFENDANT'S EVIDENTIARY PROBLEMS
AND MOTIONS IN LIMINE**

### INTRODUCTION

In anticipation of trial, the defendants respectfully submit this Motion in Limine to rule on the admissibility of evidence, including testimony, regarding the conduct and actions of the plaintiff and defendant during plaintiff's employment at DOC.  The defendants seek to:

(1)     exclude evidence of comparators that are not similarly situated with the plaintiff;

(2)     prevent the plaintiff from litigating whether the defendants' business decision in disciplining plaintiff, placing plaintiff on administrative leave and eventually terminating plaintiff was appropriate;

(3)     exclude any evidence offered by plaintiff to show that she did not engage in conduct or behavior for which she was disciplined and/or terminated;

(4)     exclude any evidence or testimony by witnesses upon whom plaintiff may rely to the effect that DOC fosters a racially hostile work environment; and

(5)     exclude any evidence of and/or recovery for allegations that were not previously alleged before the CHRO/EEOC.

**FACTS**

Plaintiff's consolidated complaint contains numerous allegations of race discrimination and retaliation. The complaints deal with a litany of claims by plaintiff that she was disciplined and/or harassed by DOC employees on account of her race. Her many complaints have followed prior litigation that was settled between 1991 and 2004. The defendants, who deny all of plaintiff's claims, offer a blanket objection to prior complaints that are both time barred and prejudicial to the allegations presently before the court.

**ARGUMENT**

**I.     The Plaintiff Should Not Be Able to Introduce Evidence of Comparators Because the Plaintiff is Not Similarly Situated to the Comparators.**

It is anticipated that plaintiff will offer several witnesses and exhibits relating to what she believes are comparable or similarly situated employees. The defendant objects to the admission of this evidence as follows:

The defendant anticipates that the plaintiff will attempt to show that she has been discriminated against by comparing her discipline to the discipline of others. "When considering whether a plaintiff has raised an inference of discrimination by showing that [she] was subjected to disparate treatment, [the Second Circuit has] said that the plaintiff must show [she] was 'similarly situated in all material respects' to the individuals with whom she seeks to compare herself." Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000). Stated in its most general form, the test for determining if a plaintiff is similarly situated with an individual is: "(1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the

45

conduct for which the employer imposed discipline was of comparable seriousness." Id. Although the plaintiff need not show that the cases were identical, "the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases." Id. If there are "differentiating or mitigating circumstances," then there comparison fails. Atterberry v. Ikon Office Solutions, Inc. , 2003 U.S. Dist. LEXIS 22316, *12 (D. Conn. Dec. 9, 2003).[26]

The plaintiff and the comparator "must hold the same position and report to the same supervisor" David v. Comtech PST Corp., 2006 U.S. Dist. LEXIS 68208, *43 (E.D.N.Y. Sep. 22, 2006) (citing Graham, 230 F.3d at 39). As the court explained in Radue v. Kimberly-Clark Corp., "when different decision-makers are involved, two decisions are rarely similarly situated in all relevant respects. . . . Different employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a prima facie case of discrimination *for the simple reason that different supervisors may exercise their discretion differently*." 219 F.3d 612, 618 (7th Cir. 2000) (citations omitted; emphasis added; internal quotation marks omitted). It is inappropriate to compare individuals of different rank. Hayes v. Kerik, 414 F. Supp. 2d 193, 205 (E.D.N.Y. 2006) (correction captain cannot compare herself to correction officers); Wallace v. Seacrest Linen, 2006 U.S. Dist. LEXIS 53683, *17 (S.D.N.Y. Aug. 2, 2006) (driver cannot compare to manager).

To be similarly situated in all material respects requires a "determination of whether two acts are of comparable seriousness requires *an examination of the acts themselves*, as well as of the *context and surrounding circumstances in which those acts*

---

[26]     All unreported cases are attached for the Court's convenience.

*are evaluated.*" Hayes, 414 F. Supp. 2d at 204. The plaintiff is not similarly situated to a individual, therefore, if the plaintiff's conduct is more serious than the individual to which he draws the comparison. Conway v. Microsoft Corp., 414 F. Supp. 2d 450, 464-65 (S.D.N.Y. 2006). Further, it is appropriate to look at the overall performance of the plaintiff before determining if he is similarly situated to another. Zubrow v. Solvay Pharms., 2006 U.S. Dist. LEXIS 7039, *25 (D. Conn. Feb. 26, 2006); see also Franchitti v. Bloomberg, L.P., 2005 U.S. Dist. LEXIS 19285, *25 (S.D.N.Y. Aug. 12, 2005) (plaintiff could not compare to individual because plaintiff was suspected of lying, had spotty attendance record, and tried to induce another employee to leave company); Bogdan v. N.Y. City Transit Auth., 2005 U.S. Dist. LEXIS 9317, *27 (S.D.N.Y. May 17, 2005) ("[p]laintiff provides no examples of individuals with poor performance records who were treated more favorably than plaintiff").

It is anticipated that the plaintiff will attempt to offer "comparators" by simply mentioning names without an offer of proof, or by attempting to place portions of the DOC discipline log into evidence without proof as to the similarity of the comparator.

It is submitted that there are no similarly situated employees as to the plaintiff with regard to the factual scenario surrounding her being placed on administrative leave and her ultimate termination. Additionally, given her numerous disciplines, she will likely attempt to introduce evidence of others who she claims were not treated similarly. Again, it is important for the defendant to know, in advance, the people who plaintiff claims are similarly situated and the evidence to support her claims.

It is requested that the plaintiff show cause, in advance, that a certain person is claimed to be a comparator in order that the defendant be able to defend plaintiff's claims and in order to prevent prejudice from a potential "trial by ambush." The defendant should be allowed to have time to determine if the plaintiff is truly comparable to other witnesses. The defendants are entitled to research the "mitigating factors" such as prior discipline different decision-makers, the similarity of the alleged incident, the positions of those being disciplined and the level of discipline.

The defendants would request that the court order the plaintiff to provide, in advance, her proffered comparators and evidence so that the defendants can properly defend against plaintiff's claims.

## II.    The Plaintiff Should Not Be Allowed To Litigate Whether Her Discipline or Termination By DOC Was a Proper Business Decision.

The defendants anticipate that the plaintiff will attempt to show that she should not have been disciplined and/or terminated. The issue in this case is not whether the plaintiff should or should not have been disciplined or terminated, but whether the discipline or termination was motivated by discrimination. An attempt to litigate whether the leave was a proper business decision violates the business judgment rule.

The business judgment rule is well established in the Second Circuit. Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001) ("[o]ur role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments"). "[F]ederal courts are not in the business of adjudging whether employment decisions are prudent or fair. Instead, [federal court's] sole concern is whether unlawful discriminatory animus motivates a challenged

48

employment decision." Alfano v. Costello, 294 F.3d 365, 377 (2d Cir. 2002), citing

Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002). As the court explained in

Chapman v. AI Transp.:

> A plaintiff is not allowed to recast an employer's proffered
> nondiscriminatory reasons or substitute his business judgment for that of
> the employer. *Provided that the proffered reason is one that might
> motivate a reasonable employer, an employee must meet that reason head
> on and rebut it, and the employee cannot succeed by simply quarreling
> with the wisdom of that reason. . . .* [F]ederal courts do not sit as a super-
> personnel department that reexamines an entity's business decisions. . . .
> Rather our inquiry is limited to whether the employer gave an *honest
> explanation of its behavior.*

229 F.3d 1012, 1030 (11th Cir. 2000) (citations omitted; emphasis added; internal

quotation marks omitted).

The defendants anticipate that plaintiff will attempt to have numerous "minitrials"

on the issue of all of her disciplines and investigations, including but not limited to her

eventual termination. She continues to claim that she did nothing wrong, that all DOC

witnesses are lying and, consequently, discriminating against her.

It is submitted that unless plaintiff can link evidence to direct or circumstantial

evidence of discrimination, see F.R.E. 104(b), thus showing that the proffered reasons

were pretextual, the Court should exclude such evidence as violative of the business

judgment rule.

### III.    Plaintiff's Evidence That She Did Not Engage in Behavior For Which She Was Disciplined or Terminated Should be Excluded.

As discussed above, it is anticipated that plaintiff will claim (as she had

previously testified at her deposition), that she never did anything wrong and that

consequently, her discipline and/or termination was a form of harassment and/or

discrimination.

The plaintiff's burden to show pretext under the <u>McDonald-Douglas v. Green,</u> 411 U.S. 792, 93 S.Ct. 1817 (1973) framework is not to show that the defendant could have or should have done something differently or something more, but rather to show that it *chose to not do more* because it wanted to discriminate against the plaintiff .

It is submitted that the plaintiff should not be allowed to litigate the underlying nuances of every one of her incidents – the inquiry at trial should be "limited to whether the employer gave an honest explanation of its behavior." <u>Chapman</u>, <u>supra</u>, 229 F.3d at 1030.

The plaintiff must either show through the testimony of witnesses that DOC was motivated to treat plaintiff differently because of her race or show through evidence that the defendant conducted the investigations and disciplined white people differently.  If the plaintiff cannot demonstrate the above, there is simply not enough to create an inference of discrimination.

The defendant would ask the Court to exclude conclusory evidence proffered by plaintiff unless she can demonstrate that she has the evidentiary capability to lay a predicate foundation as set forth above.

### IV.    Plaintiff Should Not Be Allowed to Offer Evidence of A Racially Hostile Work Environment Absent Personal Knowledge of Incidents Involving Plaintiff.

It is anticipated that plaintiff will try to have several black DOC employees, union stewards and friends testify as to, their "opinions" about DOC supervisors' alleged racial animus.  Additionally, it is expected that certain of plaintiff's witnesses will testify as to other acts of discrimination that they either allegedly witnessed or experienced.

The defendants move to preclude the plaintiff from introducing the testimony of all witnesses/co-workers who offer their own unsubstantiated opinion regarding racial discrimination and who have no personal knowledge to the incidents that plaintiff have complained about. Such testimony is precluded by Fed. R. Evid. §§ 401, 402, 403 and 701.

To prevail on a racially hostile work environment claim, plaintiff must prove (1) that she was subjected to verbal or physical conduct of a racial nature; (2) the conduct was severe or pervasive enough to create a hostile work environment; (3) the conduct was directed at her because of her race; and (4) there is a basis for imputing the conduct at issue to her employer. Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (emphasis added); Vasquez v. County of Los Angelos, 349 FF.3d 634, 642 (9th Cir. 2003). Unlike a disparate treatment case, where a plaintiff can offer evidence of intent to establish an inference of discrimination,[27] a plaintiff in a hostile work environment case must prove that the conduct she suffered is of a racial nature. In this case, not only do none of the alleged incidents happening to plaintiff reflect conduct of a racial nature, but also the incidents that plaintiff will claim allegedly happened to her co-workers do not reflect conduct by DOC personnel of a racial nature. Therefore, they are irrelevant and immaterial to plaintiff's case in chief.

---

[27] Even in disparate treatment claim cases, admissibility of the type of evidence sought by plaintiff has been limited. Heno v. Spring/United Managment Co., 208 F.3d 847, 856 (10th Cir. 2000) ("Anecdotal evidence of discrimination should only be admitted if the prior incidents of alleged discrimination can somehow be tied to the employment actions disputed in the case at hand."); Punsal v. the Mount Sinai Service of the Mount Sinai School of Medicine of New York University, et al., 2004 U.S. Dist. LEXIS 5739 * 34-35 (S.D.N.Y. 2004) (fact that coworkers filed discrimination claims against employer is of minimal probative value.)

The plaintiff may seek to offer numerous exhibits that pertain to the various self serving complaints made by black union members against DOC personnel. The plaintiff hopes that from adducing evidence of unsubstantiated complaints of disparate treatment by other black employees an inference can be drawn in the present case that the plaintiff suffered from a racially hostile work environment. The defendants remind the court that there is a difference between a claim of disparate treatment in the terms and conditions of employees based on discrete acts (allegedly toward others in this case) versus a hostile work environment claim by the plaintiff. The unique nature of the latter requires evidence that the plaintiff was subjected to an environment that was "permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victims employment" Harris v. Forklift Sys., Ins., 510 U.S. 17, 21 126 L.Ed.2d 295 (1993). In the present case there is no allegation that DOC personnel ever used, or subjected the plaintiff or any other DOC employee to, derogatory racial remarks, insults or ridicule. Nor do the incidents identified by plaintiff's potential witnesses fall neatly into such claim. Most of the complaints involve incident reports when DOC personnel reported the violation of work rules by corrections officers.  The enforcement of official agency rules cannot constitute discrimination.

The defendants object to the admission of these exhibits as unduly prejudicial, improper opinion testimony and improper character evidence.  Further, the defendant's submit that as the court considers all of circumstances to ascertain whether the environment was sufficiently hostile or abusive, the facts and case law weighs against allowing any testimony from plaintiff's friends and exhibits of **unsubstantiated** complaints against DOC personnel that either contain no allegations of a racially hostile

work environment or are simply the witnesses' self characterization of the situation as harassment.

In Leibovitz v. New York City Transit Authority, 252 F.3d 179 (2d Cir. 2001), the plaintiff in a sexually hostile environment case sought to premise her claim upon the harassment of other females in the workplace. After recognizing that in some circumstances evidence of "comments made outside the plaintiff's presence" may be admissible to demonstrate the nature of the work environment, the Court of Appeals left open the issue of whether a claim for a hostile environment by a person who was never subjected to sexual harassment can be premised upon the harassment of other employees. The Second Circuit in Leibovitz held that the plaintiff, who had not experienced harassment or witnessed harassment herself, but only had been told of it by third persons, failed to demonstrate that the other female workers' harassment adversely affected the terms and conditions of her employment, and could not demonstrate that she suffered harassment either in subjective or objective terms. 252 F. 3d at 182 ("Title VII's prohibition against hostile work environment discrimination affords no claim to a person who experiences it by hearsay"). The case law relied upon by the court in Liebovitz as a basis for the possible admission of others' comments is easily distinguished and therefore not controlling for the present case. In all those other cases cited in Liebovitz , the plaintiffs experienced some overt racial or sexual comment.

In Cruz v. Coach Stores, 202 F.3d 560 (2d Cir. 2000), the court permitted evidence of offensive racial remarks such as "nigger" directed at members of the plaintiff's protected class. Such is not the case with Eunice Smith, who does not contend that DOC personnel ever directed racial remarks or ridicule towards her. Similarly in

53

Perry v. Ethan Allen, Inc., 115 F.3d 143 (2d Cir. 1997), the court of appeals affirmed the District court's decision to exclude certain evidence of other complaints of sexual harassment as unfairly prejudicial. Noting that in some cases other complaints of sexual harassment can be probative, the court reiterated that unfairly prejudicial evidence can be excluded.

In the present case, several black co-workers and friends of Eunice Smith will be called to testify to their "experiences" with DOC personnel which they now contend were racially motivated.  Furthermore, most of the anticipated complaints by these witnesses have nothing to do with a racially hostile work environment, but are more accurately orchestrated complaints about DOC supervisors and co-workers for reporting work rule violations to their superiors.

The defendants remind the court that personality conflicts, gruff personal skills, or even yelling by a manager do not establish a cause of action under Title VII.  Farragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("Title VII does not become a "general civility code.").  The inevitable consequence of such testimony would be that several mini-trials related to each of the other employees' incidents would ensue, and the jury will impute liability to either of the defendants based on alleged acts that have no causal nexus whatsoever to the plaintiff's particular circumstances.  The defendants also hereby request a Rule 103(c) hearing outside the presence of the jury requiring that the plaintiff make an offer of proof establishing both the relevancy and foundation for these witnesses' testimony.

### V.    The Court Should Exclude All Evidence of and Recovery For Claims or Incidents Not Previously Alleged at CHRO/EEOC.

The Court has previously ruled that with respect to plaintiff's Title VII claims all incidents prior to May 22, 2001 are time barred (Docket #88). It is anticipated that plaintiff will nevertheless seek to introduce such evidence despite the Court's prior ruling. In addition, it is anticipated that plaintiff will introduce testimony about incidents that are not alleged in either the complaint or prior CHRO/EEOC pleadings. The defendants seek to have such evidence precluded.

For the reasons previously stated in defendants Motion for Summary Judgment, the defendants would ask the court to limit testimony to allegations raised at the CHRO or in the plaintiff's complaint, for the time period after May 22, 2004. The defendants would similarly request that the court disallow recovery for incidents prior to May 22, 2001.

### CONCLUSION

For the foregoing reasons, the defendants request that its Motion in Limine be granted.

**15.    PROPOSED FINDINGS AND CONCLUSIONS:**  Not applicable.

**16.    TRIAL TIME:**  Plaintiff:  three days.
Defendant:  Total ten days.

**17.    FURTHER PROCEEDINGS:**  None at this time.

18.    **ELECTION FOR TRIAL BY MAGISTRATE.**

The Parties have not agreed to have this case tried by a United States
Magistrate

_/s/_

John R. Williams
John R. Williams and Associates, LLC
Federal Bar No. ct00215
51 Elm Street, Suite 309
New Haven, CT 06510
Tel: (203) 562-9931
Fax: (203) 776-9494
E-mail:  jrw@johnrwilliams.com

_/s/_

Jane B. Emons
Assistant Attorney General
Federal Bar No. ct16515
55 Elm Street - P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5340
Fax: (860) 808-5383
E-mail:  jane.emons@po.state.ct.us

## CERTIFICATION

I hereby certify that on June 19, 2006 a copy of the foregoing Joint Trial
Memorandum was filed electronically.  Notice of this filing was sent by e-mail to all
parties by operation of the Court's electronic filing system.  Parties may access this filing
through the Court's system.

_/s/_

Jane B. Emons
Assistant Attorney General
Federal Bar No. ct16515
55 Elm Street - P.O. Box 120
Hartford, CT 06141-0120
Fax: (860) 808-5383
E-mail:  jane.emons@po.state.ct.us